MARY A. P. DRAPER, Trustee, etc., Appellant and Respondent, v. RICHARD SUYDAM PALMER, et al., Appellants and Respondents.

*Supreme Court, Fifth Department, General Term, November 7, 1889.*

1. *Trusts. Deed.*—Where a trust deed for the benefit of two grandchildren provides that, in case either grandchild dies under thirty years of age, leaving no child, then the trustee shall convey his share to his surviving brother, the trust as to such share ceases upon the happening of such event, and the title to it vests in the survivor.

2. *Same. Accumulation.*—Where the surplus rents and profits are directed to be accumulated for the benefit of the deceased brother, and paid to him when of age, the payment of, and not the right to, such surplus is postponed, and, on his decease before majority, it forms part of his estate.

3. *Same.*—A clause in the trust deed, providing that, if any person other than the two grandsons named shall become entitled to take any share or interest in the lands and be under the age of twenty-one, such share shall be held in trust and the rents and profits applied to the use of such person until he attains that age, does not include the case of a surviving infant grandson, or continue in the trustee the trust appertaining to the deceased grandson.

Appeal from a judgment recovered on trial at the special term.

*John L. Cadwalader, Lewis Sanders* and *Frederick, P. Foster,* for plaintiff and others. *James C. Carter* and *Lewis Cass Ledyard,* for defendants Haven, etc.

*Henry Sanger Snow,* guardian *ad litem* for Richard Suydam Palmer.

DANIELS, J.—This action in its theory was brought to settle the accounts of a trust estate, of which the plaintiff has been appointed and acted as the trustee. But for the purpose of settling the accounts and ascertaining the rights

of the parties to an accumulated fund, it became necessary to place a construction upon deeds executed by Cortlandt Palmer conveying two undivided one-eighth parts of his real estate in trust for the benefit of John Arnot Palmer and Richard Suydam Palmer, who were his grandchildren.

It is to be inferred from the deeds at different times executed by Cortlandt Palmer, that he designed to provide, through their instrumentality, for the disposition of his property for the benefit of his children and their descendants after his own decease. The deeds made by him included various parcels of real estate, in all of which a life estate for himself during his life was reserved. And after his decease trusts were created for the benefit of his children in undivided portions of this property. One undivided part was originally conveyed in this manner on the 26th of May, 1857, to Oliver De Forest Grant, for the benefit of the grantor's son, Richard Suydam Palmer. In this, as well as the other deeds, the power was reserved for further and additional declarations of trust by him provided that the trusts should be for the benefit wholly of his children, or lineal descendants, or some of them.

Before the time of the decease of Cortlandt Palmer, the grantor, this son, Richard Suydam Palmer, died, leaving his wife, and two children, John Arnot and Richard Suydam Palmer, surviving him. And to meet and provide for this change, and under the authority in this manner reserved in the deeds for the benefit of his son, he, together with Cortlandt Palmer, Jr., and Charles Phelps Palmer, who were trustees succeeding the trustee appointed under the first deed of this one-fourth of the real estate, executed and delivered a further conveyance of the property to Henry Draper, for the benefit of these two surviving children of his deceased son, Richard Suydam Palmer. Two other deeds affecting the property were afterwards made, the object of the second being apparently to secure the power to place a mortgage upon a portion of the land. And after that was

accomplished the third deed was executed and delivered to re-vest the property, and in like manner again declare the trusts, in the same trustee, Henry Draper. And it is upon the construction to which the first and third trust deeds should be subjected that the disposition of the action has been made dependent. For after the decease of Cortlandt Palmer, and on the 5th of November, 1885, John Arnot Palmer, one of the beneficiaries in the trusts declared by these deeds, departed this life, leaving his brother, Richard Suydam Palmer, and his mother, Fannie Arnot Palmer, surviving him. At the time of his decease both himself and his brother were infants under the age of twenty-one years, and his mother intermarried with George C. Haven, and they, upon his decease, were appointed administrator and administratrix of the estate of John Arnot Palmer, deceased.

By the deeds affecting this part of the property of Cort-landt Palmer it was declared by him that if either of these two grandsons should depart this life before attaining the age of thirty years, leaving a child or children him surviving, the half part of the land, premises and trust fund should be conveyed, assigned and delivered to his child, or children, or such of them, and in such shares or proportions, as he should by his will, or written appointment, direct. And in default of such will or appointment, then in equal shares for their own use forever. And in case either of these grandsons should die under thirty years of age leaving no child him surviving, then his share was directed to be conveyed assigned and delivered to his surviving brother then living, and if there should be no such survivor, then to the children surviving him, in equal shares, etc. John Arnot Palmer died unmarried, and leaving no child or children to whom his share in this estate could pass under any direction contained in the deeds. This share consequently, by the direction which has just been referred to, passed to his surviving brother, Richard Suydam Palmer. And although he was an infant at the time, as no other or further trust was created,

or directed to be created, in this share of the property in the event of his survivorship, and no direction was given under which the trustee was authorized to hold or continue in its possession or management, it was to be conveyed and passed directly to this surviving brother. For its disposition the directions contained in the deeds were wholly unqualified, and evince the intention of the grantor of the property to be that it should absolutely vest in the surviving brother upon the contingency which in this manner is shown to have taken place. These directions are clear and explicit, and leave no reasonable ground for doubting what the grantor in the deeds intended should be the disposition of this share of the estate upon the decease of his grandson, John Arnot Palmer.

It has been urged that a trust continued in the trustee of this part of the property by reason of a direction in the deeds, " that if any person other than the said John Arnot Palmer or Richard Suydam Palmer, second, shall become entitled to take any share or interest in said lands or said trust fund, and shall then be under the age of twenty-one years, such share shall be held by the said party of the third part and his successors and they shall apply the rents and profits thereof to the use of such person until such person shall attain the age of twenty-one years." But this direction in the deed excludes the case of this surviving brother. It was by its language made to comprehend only the case of some person other than one of these two brothers becoming entitled to the share or interest in the estate provided for the deceased brother. Why the grantor should have framed the direction in this manner does not appear. But it is sufficient for the purpose of the case that he did so frame it and provided by this direction only for the continuance of the trust when the person becoming entitled to the estate should be an individual different from John Arnot or Richard Suydam Palmer. The expression of this intent has been so clearly made as to produce the immediate vesting of the share of this deceased

brother upon his decease in his surviving brother. . As to
that, it has declared no continuation whatever of the trust
in this share of the property during the minority of this sur-
vivor.    But the share of the deceased brother was designed
to vest at once and absolutely in him.    And the fact of his
minority at the time of such decease was not made in any re-
spect a qualification of his right to the absolute title.    It may
very well be that the grantor of the estate did not anticipate
the occurrence of the death of either of these sons during the
minority of the survivor.    But the direction for the disposi-
tion of the share of the deceased brother has been given in
such general language as to include and provide for this
event, even though it occurred as it did within the minority
of the surviving brother.    The fact that the survivor being
an infant could not be discreetly entrusted with the estate is
of no moment.    For as to that the law has provided the
means by which it shall be managed and possessed and the
interests of this surviving brother to be cared for and pro-
tected.

The deeds in controversy provided and directed that the
rents and profits of one-half part of this quarter of the prop-
erty should be received by the trustee and applied to the use
of John Arnot Palmer during his life.    This, however, was
subjected to the further qualification that upon his attaining
the age of thirty years, and with the consent in writing of his
mother, if she should then be living and capable of giving
such consent, this equal undivided eighth part of the prop-
erty, and all of such additions as might theretofore have been
made to it, should be conveyed, assigned, transferred and de-
livered to him in fee simple absolute, for his own use forever.
It was further directed that the rents and profits of this part
of the estate should be applied to the use of this grandson.
And if there should be a surplus not required for his neces-
sary, proper, convenient and full support, education, improve-
ment and comfort then, " such surplus shall accumulate for his
benefit, and on his attaining the full age of twenty-one years,

the whole of such surplus, with its accumulations, shall be paid to him for his own use absolutely. And after he shall have attained the age of twenty-one years, and thenceforth until he shall attain the age of thirty years, the whole of his one-half of such rents and profits shall be paid to him for his own use absolutely upon his receipt, or order, in writing, as the same shall accrue from time to time." There was a surplus of these rents and profits accruing from this part of the estate during the life of John Arnot Palmer. And the more seriously controverted part of this case has been made to include the disposition of this surplus. It was considered at the special term that it should be retained until the surviving brother, Richard Suydam Palmer, attained the age of twenty-one years, and then be paid over to him. But this determination derives no substantial support from any direction contained in the deeds, or in those antecedently made for the benefit of Richard Suydam Palmer, the father of these two sons. It was held by the court, and has again been insisted upon on the argument of the appeals, that the expression, " trust fund," employed with more or less frequency in each of the deeds, was designed to include these accumulations. But this phrase does not appear to have been so employed in the framing of the deeds.

When the owner of this property endeavored to dispose of it by the deeds made by him, it was anticipated that additions might afterwards be made to so much of his estate as in the first instance was conveyed in trust for his son, Richard Suydam Palmer, and after his decease for the benefit of these, his two sons. And when reference was made in the deeds to the property, that reference was expressed in language so broad as to include, not only that which was described in the deeds, but that which might afterwards be added to it by Cortlandt Palmer, the original grantor or otherwise. And it was to express the contemplated increase in the capital of the estate that this phrase was employed by him. And that it was appropriately employed in this matter appears

from the concluding portion of the fourth paragraph of the deed executed in May, 1857. For by that paragraph the surplus rents and profits of the share of the property mentioned in the deed was permitted to be loaned upon bonds and mortgages on improved and productive real estate. And these bonds and mortgages the trustee was directed to hold and apply to the use of the testator's son, and the principle of the fund was then made subject " to all the provisions above contained in respect of said premises as herein mentioned and constituting the original trust fund, in all the respective events above mentioned."

Authority was at the same time given to make similar investments in other real estate, which was to be added in like manner to the capital of trust. And in referring to these two sources of increase the grantor in the deed designated the other property, which consisted wholly of real estate, by the employment of this phrase, as the original trust fund. In the succeeding paragraph the intention that this phrase should include only the property held in trust was plainly again repeated, for it was referred to as " the said premises and all additional property, real and personal, acquired or added to the 'trust fund.' "

A repetition of the same understanding was made in the eighth paragraph of the deed providing for improvements in the property, and they, together with any other means which the son himself should provide, were mentioned and referred to as the trust fund. The deed, by its ninth and tenth paragraphs, created a power to partition, or exchange, the property and moneys which might be received for equality of partition, was directed to become a part of the trust fund. This phraseology was, in like manner, followed in the deed of the 9th of November, 1867, and contemplated the execution of the same intention on the part of the grantor of the property. At that time no addition had been made to this share of the estate, and this phrase was plainly employed as the equivalent of the property described in the deed in the

concluding part of its paragraph, for there it was referred to as a share of the said property or trust fund ; and that this phrase was designed to include only the estate conveyed in trust, with the additions to it, appears still further and unequivocally from the language of the fourth paragraph of the deed, where the description has been given by the language of " the said premises, and all additional property, real and personal, acquired, or added to the trust fund, in pursuance of these presents." In the eighth paragraph of this deed providing for a partition, payment was again directed to be made, or received, to include equality of partition, from the trust funds or into the trust funds ; and further, by the succeeding paragraph, the trustee was directed to receive moneys provided for equality of partition " into the trust fund." The same expressions are contained in the deeds now more especially in controversy. In the first of these deeds the property is mentioned as " the said real estate, and all additional property, real and personal, acquired or added to the trust fund, in pursuance of the said trust deed ; " and the request was made therein of the preceding trustees to convey and transfer " the said real estate, and all additional property added, or acquired, to the trust fund, as aforesaid," etc. And in providing the contingent power of a partial conveyance upon the attainment of the beneficiary of the age of thirty years, the property to be conveyed was " one equal undivided half part of said above described fourth part of said land and premises, and the equal undivided half part of all such additions as may have theretofore been made to the trust fund, as by these presents provided ; " and in providing an annuity for the widow of his son, the property out of which it was to issue was described as " the said rents and profits of said one-fourth part of said lands and premises and said trust fund." And in further declaring the employment of the rents and profits, they were mentioned as those " of said trust premises and fund," and similar directions to those already mentioned concerning moneys received for

equality of partition was also inserted and contained in this deed. And for the benefit of the widow, if there should be a widow of this deceased person, it was directed, while she continued to be his widow, that " so much or such part of the said trust estate, or trust fund, as shall be convenient or necessary for the raising of the said $7,000 a year," should be reserved for this object.

It is needless to pursue or add to these extracts by making others expressed in the same general manner in the final deed made on the 22d of November, 1872. For they all equally evince the understanding of the grantor of the property to have been that this phrase should be applied, as it certainly was employed, to refer only to such additions as might, under the conveyance, be made to the capital of the trust itself. And no different construction of the language will be justified by the general intention expressed in the deed that the changes to be made by him should be for the benefit only of his lineal descendants. For the reservation of the authority to make these changes referred in each instance to the property conveyed by him by virtue of the deeds and that which might afterwards be added to it, and not to such an accumulation of rents, or profits, as has become the subject of this controversy. In all instances in which he reserved the power of giving different directions, and where they have been restricted to such as should be made for the benefit of his lineal descendants, the subject to be affected has, by clear expression, been confined to the trust estate as distinguished from its accumulations, with the exception of such surplus as should be added to it by reason of loans, or investments, in other real estate, in which instances the additional property, as well as the securities, were made a part of the capital of the trust.

In the directions given for the accumulation, the grantor strictly confined himself to the power provided for that object by the statute, for the accumulation was directed to be for the benefit of the son out of whose share or interest it arose

during his minority. And that followed the language of the statute itself, providing that " an accumulation of rents and profits of real estate for the benefit of one or more persons may be directed by any will, or deed, sufficient to pass real estate, as follows :

*First.* If such accumulation be directed to commence on the creation of the estate out of which the rents and profits are to arise, it must be made for the benefit of one or more minors then in being and terminate at the expiration of their minority. 2 R. S. 6th ed., 1103, § 37. And as no additions in the way of securities, or other personal property, were made to this trust estate, the accumulation is wholly controlled by this part of the statute. And it was required to be, as it was directed in the deed it should be, for the benefit of this minor grandson. And having been declared in the deeds to be solely for the benefit of this deceased grandson as far as the accumulation of the rents and profits of his share were made, the rents and profits so accumulated belonged to him. They were unqualifiedly to be for his benefit. And he was in no manner afterwards directed to be deprived of that benefit, but it was to be ultimately secured by paying over the accumulations to him on his attainment of the age of twenty-one years. The object of the statute, as well as of this language of the deed, in confining the accumulations to the benefit of the minor, was to vest the right to the moneys, as they accumulated out of the share of the estate appropriated for him by the deeds, in him. And it is conformable in this respect to what the court on general principles held in Manice *v.* Manice, 43 N. Y. 303, holding that where a present gift appears to have been contemplated, although subjected to a future time for the payment, the interest in the subject of the gift becomes at once vested in the donee. This subject was examined fully in Pray *v.* Hegeman, 92 N. Y. 508, where it was said in the opinion of the court that the statute " treats rents and profits authorized to be accumulated under § 37 as the property

of the minor, the enjoyment of which has been post-poned." Id. 516. And so absolutely is this direction to be observed, that it was held that the accumulations could be no otherwise directed to be applied for the benefit of the infant on the attainment of his majority, than by the payment over to him, in that event, of the moneys accumulated, and in this respect overruling Meserole v. Meserole, 1 Hun, 66. And this seems to have been the understanding of the grantor of the property in these deeds, for in no instance has he un-dertaken to give any direction for the disposition of rents and profits accumulated in this manner. But the direction given by him and the powers reserved to him in the several deeds have been made to include no more than the property itself which it was provided should be held in trust.

The case of Wood v. Mitcham, 92 N. Y. 375, has been largely relied upon as supporting the position that these rents and profits should be held for the benefit of and finally paid over to the survivor of these two brothers. But neither that case, nor any other authority, sustains this argument. What was chiefly there decided was that where a will is cap-able of two interpretations, that one should be adopted which prefers those of the blood of the testator to strangers. And the same principle of construction would be equally appli-cable to these deeds. But they do not present grounds for two different constructions. They are, on the contrary, wholly in one direction. And that direction upon this sub-ject proceeds no further than that the surplus rents and prof-its should be accumulated for the benefit of the deceased brother, and paid to him on the attainment of his majority. It was the payment and not the right which was in this manner postponed. With the contingency of his decease after the accumulations commenced, and before reaching his majority, the deeds have given no direction, but they have left the case wholly to the application of the settled rules of law concerning the disposition which should be made of the accumulations. And as they became the property of the

deceased minor, for whose benefit the moneys were accumulated, when he departed this life they were necessarily left by him as part of his estate, to be distributed and disposed of under the directions of the statute, to his next of kin.

And so far as the judgment has directed a different disposition to be made of these accumulations it was erroneous and should be reversed.

In the disposition of the case costs and allowances were provided for by the judgment. The allowances are by no means unreasonable in the amounts for which they have been made. And they, together with the costs, are directed to be paid out of this accumulated fund. The litigation has been principally directed to the disposition of this fund. No contest otherwise appears to have arisen concerning the settlement of the plaintiff's accounts. The items contained in it are not disputed, but it is the disposition which should be made of this part of the estate that has been made the substantial ground of controversy. And no injustice therefore can exist in directing this fund to bear the burdens of the litigation.

The judgment should be modified by reversing so much of it as determined the accumulations to belong to the surviving brother of John Arnot Palmer, and as directed his share of the estate to remain in trust until the surviving brother, Richard Suydam Palmer, should attain his majority. And the further direction should be added to the judgment, declaring the share of the trust estate held for the benefit of John Arnot Palmer to have vested at the time of his decease in his surviving brother, Richard Suydam Palmer, and requiring the same to be conveyed to him, and directing the accumulations of this share of the estate to have vested as they accrued in this deceased brother and to have been his property at the time of his decease, and payable to his administrator and administratrix, to be distributed among his next of kin. And with these changes and modifications the

. judgment should be affirmed, with costs of the appeal to be . in like manner paid to the parties out of the fund.

VAN BRUNT, P. J., and BARRETT, J., concur.