had been unreasonably withheld and refused; but no such attempt was made,. no certificate was demanded, and none was furnished.

But, even if the engineer of the Pabst Brewing Company had unreasonably refused to grant a certificate, the plaintiffs could not have demanded the payment of an arbitrary sum for the work done. They would have been obliged to ascertain in the best way they could, by measurement by another engineer or some other competent person, the amount of work done, and then they could have demanded an 85 per cent. payment. Their demand for payment of $1,000 or $1,500 was grossly excessive, and far beyond the value of the work done by them, which, from the evidence, did not exceed $500 at the outside at contract prices, and their claim that half the work was done was not supported by the evidence.

At the time of the conferences and correspondence looking to an adjustment of the differences between the parties, the time limited by the contract for the completion of the work had long since expired, and plaintiffs showed no desire or intention to complete their work. The reason of this is rendered apparent to me from the evidence. The plaintiffs had taken the contract at a very low price, expecting to blast out the rock in very large and heavy pieces, and to use them in government fortifications; but they seem to have been disappointed in their object, and allowed the rock to remain on the ground instead of removing it, and they saw that it would require reblasting to render it fit for ordinary uses or for removal without the use of a derrick. There was evidently no profit in doing this, as is shown by the cost to defendants of completing the contract, and plaintiffs preferred to take their chance of success in a lawsuit in recovering for the work done, and throwing the blame on defendants for the breach of the contract. I am of opinion that plaintiffs unlawfully abandoned their contract, and that defendants Weber are entitled to set off so much as necessary of their damages for such breach as. will cancel the claim of the plaintiffs in this action, and to recover against the plaintiffs for the balance, with costs.

Argued before VAN BRUNT, P. J., and BARRETT, PATTERSON, O'BRIEN, and McLAUGHLIN, JJ.

W. H. Newman, for appellants.

B. N. Cardozo, for respondents.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the referee.

---

(50 App. Div. 407.)

### In re MANNING.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

1. WILLS—CONSTRUCTION—DISINHERITANCE OF GRANDCHILD.

   In one paragraph of a will, a testator devised certain real estate to his wife. In another paragraph he devised certain lands to his son F. The next paragraph · was divided into four parts, the first of which devised certain other lands to the testator's three remaining children in common; the second conferred powers on the three children after they became of age; the third provided that, in case the subject of any of the three devises mentioned should be sold, the proceeds should go to the survivor, and then provided that, if any of the three children to whom the third devise was made should die, leaving no issue, his share should go to the survivor, and, "if issue be left by any of my said children dying, such. issue shall take under this will the share of the parent." A subsequent paragraph of the will devised the residue of the estate to the wife and to each of the four children. Held, that the clause quoted must be construed as applying to the shares of all four of the testator's children, and that, F. having died before the testator, leaving a child surviving him, the child was entitled to take the estate which F. would have taken if living.

2. SAME—CODICIL—REVOCATION.

 A testator, having sold certain real estate devised to his children, made a codicil to his will, whereby he bequeathed to each child a specific sum of money instead of the real estate, and provided that, if any of the children should not survive him, the "money bequeathed to them" should be divided among the survivors. *Held*, that the codicil did not change the provisions of the original will as to the residue of the testator's estate, which it devised in stated proportions to the wife and children, and provided that if any child died, leaving issue, the issue should take the share of the parent.

Appeal from surrogate's court, Kings county.

In the matter of the settlement of the account of Sarah Atwater Manning, as executrix of the last will of Frederick Royal Manning, deceased. From a judgment of the surrogate (60 N. Y. Supp. 1006) excluding Morgan Arnold Manning from participation in the estate, the latter appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Edward M. Shepard (Joseph M. Allen, on the brief), for appellant.
George G. Reynolds, for respondents executrix and others.

GOODRICH, P. J. There are certain well-established principles of the law of wills which must control the disposition of this appeal.

First. Unless the language of a will plainly indicates an intention on the part of the testator to disinherit a child, such child will not be disinherited. It is not enough to say that there is no indication of an intention to make the child a beneficiary. The will must disclose the intention to disinherit.

In Scott v. Guernsey, 48 N. Y. 106, speaking of a devise to the children of the testator's daughter, it was said (page 121):

"The law favors a construction which will not tend to the disinheriting of heirs, unless the intention to do so is clearly expressed."

In Stokes v. Weston, 142 N. Y. 433, 37 N. E. 515, the court said (page 439, 142 N. Y., and page 517, 37 N. E.):

"The law favors equality among children in the distribution of estates, and in cases of doubtful construction it selects that which leads to such a result."

In Van Kleeck v. Dutch Church, 6 Paige, 600, Chancellor Walworth, speaking of lapsed devises and lapsed legacies, said (page 612):

"The right of the heir at law does not, in either case, depend upon the intent of the testator to give him that part of the estate, but upon the principle that the heir is entitled to every part of the estate which the testator has not shown a clear intention of giving to some other person. * * * An heir can only be disinherited by express words or necessary implication."

Mr Justice Cullen, in Shangle v. Hallock, 6 App. Div. 55, 39 N. Y. Supp. 619, after reviewing several cases in the court of appeals, said (page 60, 6 App. Div., and page 622, 39 N. Y. Supp.):

"In the light of this recent and unbroken line of authorities in the highest court of this state, we think it may safely be affirmed that the court, in construing a will, will lay hold of any expression or provision of the will that can properly be used for that purpose, to prevent the discontinuance of the issue of the primary object of the gift in case of that object dying before the time for distribution."

Second. This rule is equally applicable to grandchildren of a testator. It was said in Low v. Harmony, 72 N. Y. 408, 414:

"When the language of a limitation is capable of two constructions, one of which would operate to disinherit a lineal descendent of the testator, while the other will not produce that effect, the latter should be preferred. An intention to disinherit an heir, even a lineal descendant, when expressed in plain and unambiguous language, must be carried out; but it will not be imputed to a testator by implication, nor when he uses language capable of a construction which will not so operate."

The same doctrine was declared in Re Brown's Estate, 93 N. Y. 295, and in Re Miller, 155 N. Y. 646, 49 N. E. 757, affirming In re Miller, 18 App. Div. 211, 45 N. Y. Supp. 956, on the opinion delivered by this division. We see no reason why the same rule should not be applied to cases other than limitation. It may be said in passing that the learned surrogate recognized the principle.

Third. The language of a codicil will not be permitted to disturb a will further than to the extent necessary to give effect to the codicil, which does not operate as a revocation of previous testamentary disposition, unless by some plain direction, or by force of clear import of language in some inconsistent or repugnant provisions. Hard v. Ashley, 117 N. Y. 606, 23 N. E. 177.

With these principles in view, we come to a statement of the facts in the case at bar. Frederick R. Manning, having executed his last will, dated June 7, 1888, made two codicils, one dated June 25, 1889, the other, March 11, 1892, and died in March, 1898. At the dates of the will and codicils he had a wife, Sara, named as executrix of the will, and four children, Frederick, Sara Rose, Edgar, and Marguerite. Frederick married in December, 1893, and died in December, 1895, leaving a child of the marriage, Morgan A. Manning, born September, 1894. The printed evidence does not show the ages of the testator's children at the date of the will, or whether either of the sons was then married, but item 6 refers to the minority of some of his three children. The daughters, being called by the surname Manning, we may assume to have been sole at that time. Nor does it appear whether either of the sons, if married, had children. The testator left, him surviving, the widow, three children of those above mentioned, and the grandchild Morgan. The contention of the parties to this litigation may be stated briefly as follows: The respondents, who are the widow and executrix and the three living children of the testator, claim that the grandchild, the appellant, takes no part of the estate under the will. The appellant claims that he takes the share which his father would have taken if he had survived the testator. The general scheme of the will, so far as is necessary to state it, is as follows, the paragraphs being called "items" in the will: Item 4. Devise of the Hicks street house and furniture to the widow. Item 5. Devise of Monroe county, Iowa, lands to Frederick. Item 6. Devise of lands in Wapello county, Iowa, to his other children, Sara Rose, Edgar, and Marguerite; a provision that, in the event of a sale of either of the parcels mentioned in items 5 and 6 during the testator's life, the devisees respectively should receive the proceeds (clauses more fully set forth hereafter). Item 8. Bequests of money to sisters of him-

self and his wife. The residue of the estate to be divided, $^8/_{30}$ to his wife, $^6/_{30}$ to Frederick, $^6/_{30}$ to Edgar, $^5/_{30}$ to Sara Rose, and $^5/_{30}$ to Marguerite. Item 9. If the wife's $^8/_{30}$ did not amount to $30,000, the sum of $30,000 absolutely was bequeathed to her; and the residue of the estate given, $^6/_{22}$ to Frederick, $^6/_{22}$ to Edgar, $^5/_{22}$ to Sara Rose and $^5/_{22}$ to Marguerite. Item 10. Insurance money received from the Gratuity Fund of the New York Produce Exchange to be treated as a part of the estate, and money received therefrom by beneficiaries under the will to be deducted from their share of the estate. Item 6 referred to the farm given in item 5 to Frederick, and also to the farm given in item 6 to the three other children, and contains the following clause:

"Should any of my three children to whom I devise my real estate in the county of Wapello, Iowa, die during minority without disposing of the same and leaving no lawful issue, then the interest herein provided for such child or children shall belong and go to the surviving co-devisees or devisee (as the case may be) of said real estate. If issue be left by any of said children dying, such issue shall take under this will the share of the parent or parents so dying."    \

It will be observed that the first sentence of this clause is complete in itself, and provides that, in case of the death during minority of either of the three children mentioned in item 6, the interest of the deceased child shall go to the surviving co-devisee or devisees; and that the next sentence, also complete in itself, provides that, in case issue be left by any of the said children dying, such issue shall take under the will the share of the parent so dying. If this latter sentence had been in a separate paragraph or item by itself, following items 5 and 6, there would be no doubt that under the original will the grandchild would have taken the share of his dead father, the son of the testator, for then the words "said children" would have related to all the four children of the testator previously mentioned in the will. The use, also, of the words "under this will" would seem to justify the belief that the sentence was intended to relate not alone to the paragraph or item in which it is found, but to the entire will. The doubt which arises as to the intention of the testator results from the juxtaposition of this sentence with the preceding one, which relates only to the three children. But, how can the sentence be construed to relate exclusively to the preceding sentence, when the paragraph containing both sentences relates to Frederick as well as the other three children? Why should we limit the use of the words "said children" to three of the four children referred to in the paragraph, if the result be to defeat the settled policy of the law against disinheriting lineal descendants? A careful analysis of item 6 will make this still more plain. Item 4 gives the Hicks street property to the testator's wife. Item 5 gives the Monroe county farm to Frederick. These items are complete in themselves. Item 6 follows, and is divided into four paragraphs. The first gives the Wapello farm in trust for the three children equally. The second confers powers upon the three children in respect to their respective devises after they become of age. The third relates to the wife's house, to the Monroe county farm, devised

to Frederick, and to the Wapello county farm, devised to the other three children. It states what shall be done in case either the house or either of the two farms shall be sold,—that is, that the proceeds shall go to the persons to whom such properties were respectively devised,—and closes with the sentence above quoted. How can it be said that the sentence, coming at the close of the paragraph, does not relate to all of the children referred to in any part of the paragraph? The fourth paragraph relates to the gratuity fund. From a reading of the entire will, it is manifest that it is inartificially drawn. If it was drawn by the testator, who does not appear to have been a lawyer, it is possible that he did not appreciate the importance which would have attached to a separation of the last sentence. Following the general rule that in construing a will so as not to disinherit lineal descendants, if the will is capable of two constructions, that must be preferred which will not disinherit, and that words may be transposed to carry out the intention of the testator (Hull v. Pearson, 36 App. Div. 224, 55 N. Y. Supp. 324), we prefer to construe the sentence in question as if it were a separate clause or item of the will, the effect of which is that the appellant is entitled, under its provisions, to take the estate which would have been taken by his father if living at the death of the testator.

The next question to be considered is whether there is anything in the codicils which works a revocation of the part of the will referred to. The respondents' counsel does not seem to claim that any change of the general scheme of the original will was effected by the first codicil, which related to the Monroe county farm, devised to Frederick, and sold by the testator. The second codicil, in its second paragraph, reads:

"Second. Having sold and disposed of the farm referred to in item 6, page 2, of my said will, to wit, the farm described therein as containing 712 acres, more or less, and situated in the county of Wapello, state of Iowa, I hereby give and bequeath in lieu of the former devise of said farm to my three children Sara Rose Manning, Edgar Atwater Manning, and Marguerite Manning the sum of three thousand dollars each. If my wife or any of my four children be not living at the time this will takes effect, the money bequeathed to them shall be divided among the survivors in the same proportion as other property specified in the will. If I survive my said wife, the house devised to her, and all else described in item 6 of my will goes to her three children Sara Rose Manning, Edgar Atwater Manning, and Marguerite Manning."

It is strange that the paragraphs of this codicil are numbered first, second, and fourth, there being no third. Paragraph 2, just quoted, recites a sale of the Wapello farm, which the testator had devised to the three children, and bequeaths to each of them, in lieu thereof, $3,000. It would seem that the remainder of the paragraph was really intended to be paragraph third, inasmuch as it relates to two different subjects,—that is, money bequeathed to the children, and the Hicks street house; and such a suggestion is made by the learned counsel for the respondents. This paragraph contains the sentence out of which the contention of the respondents arises. It provided that, if any of the four children should be dead when the will took effect, the money bequeathed to them should be divided among the survivors in the same proportion as other property specified in

the will. Assuming, as the respondents' counsel contends, that the word "money" is used in the will in contradistinction to "real estate,"—that is, the house referred to in the next sentence,—and that it does not relate to the share of Frederick in the residuum, we have an apparent intention that the money derived from the sale of the Monroe county and Wapello county lands should be divided among the survivors of the four children. This does not affect the general scheme of the original will, which, as we have construed it, makes the grandchild take his deceased father's share in the residue of the estate. If it were necessary, we might well say that the testator, in using the word "survivors," did not intend to exclude his grandchildren surviving their parent. There has been a good deal of discussion as to this word, and the authorities cited in 3 Jarm. Wills, c. 48, show that, instead of being limited to its ordinary definition, it is capable of such construction as will carry out a testator's intention, express or implied. But, in the view we have taken of the original will, it is not useful to discuss the authorities cited. The use of the words "money bequeathed," in the second codicil, must also be considered in the light of the will and the first codicil. It is contended in the brief of the respondents that "when he [the testator] said 'money bequeathed,' therefore, he meant nothing different from his language in disposing of the 'residue' of his estate" in the eighth item of the will. But the testator, in item 9, in the contingency that his wife's share in the residue should fall below the full sum of $30,000, bequeaths to her "the full sum of $30,000 absolutely." This would seem to be a bequest of money. It is made superior to the bequest of the residue of the estate. If his wife should predecease him, says the second codicil, the money bequeathed to her is to be divided among the survivors of the four children in the same proportion as other property specified in the will. But we have already held that under the original will the infant would have been entitled to take his father's share of the other property; that is, property other than the money derived from the Monroe and Wapello county lands. The first codicil provides us with a definition of the word "money" as used by the testator, when it says "that the executors be not required to convert into money any securities," drawing a clear distinction between money and securities. The will also refers to "the remainder of my property," "the residue of my estate," and speaks of the gratuity fund as "part of my estate." In view of these expressions, it seems clear that by the use of the words "money bequeathed," in codicil 2, taken with the context, the testator referred only to the money derived from the sale of the Monroe and Wapello lands, which, having sold, he specifically bequeathed the money proceeds, viz. $3,000 in each case, to the children to whom the lands were respectively devised. In order to sustain the contention of the respondents, we shall be compelled to attach a definition to the word "money" additional to the sense in which it is ordinarily used, and to say that it covers stocks and securities; indeed, all personal property passing by the residuary clauses of the will. To sustain the contention of the appellant, we have only to give the word the

meaning in ordinary use; and, under principles already referred to, we incline to that course.

The fact that the testator did not make a new codicil, or alter his will, either upon the marriage of Frederick, or upon his death, or upon the subsequent birth of the child, all within the testator's lifetime, coupled with the fact that the person who drafted the will may not be presumed to have been entirely ignorant of the common and statutory law, may be regarded as some evidence of the intention of the testator that issue of deceased children, if he should leave any, should succeed to the share which their parent would have taken if living at the time of the testator's decease. It is true that we are to seek the intention which the testator had at the time, and only at the time, he executed the will, and that subsequent and unlooked-for conditions and facts could have had no influence upon his mind, and cannot be taken into account by us in arriving at his intention; but at the same time we may (as, doubtless, he did) consider facts which, in the course of nature, were likely to occur (such as the marriage of some of his children, and the birth of issue to them). Such facts stand on a different plane from unforeseen and unexpected contingencies. Our conclusion is that codicil No. 2 has not altered the scheme of the original will, so far as the matter under review is concerned, and that by the original will the grandson, Morgan, takes the share which his father would have taken in the residuary estate of the testator if he had been living at the time the will took effect. The decree of the surrogate's court should be reversed.

Decree of the surrogate's court of Kings county reversed, and the proceedings remitted for disposition in accordance with the opinion of GOODRICH, P. J.; costs to all parties payable out of the estate. All concur.