HELENA DAY SNYDER, Appellant, *v.* LOUIS J. SNYDER, as Trustee under the Last Will and Testament of SAMUEL F. ENGS, Deceased, and Others, Respondents, Impleaded with LOUIS J. SNYDER, Individually, and SAMUEL F. ENGS, Appellants.

Second Department, March 1, 1918.

Will — trust — construction — intent of testator — application of rules of construction — vested and contingent interests — presumption as to intestacy — words " survivor or survivors " construed.

When the terms of a will are plain and unambiguous, it is unnecessary to resort to intricate and refined rules of construction.

Where the intention of the testator is reasonably clear, it is unnecessary to refer to decisions in other cases involving the vesting of property held in trust.

Rules for the construction of wills are for the sole purpose of ascertaining the intention of the testator.

If the intention of a testator is clear and manifest, it must control regardless of all rules of construction.

A testator left property in trust during the lifetime of his wife, and provided that upon her death without issue certain amounts should be paid to his nephews out of the residue and remainder, and directed his trustees " to pay to each of my sisters the sum of $1,000." He further provided that upon the death of his wife without issue by him surviving, that in addition to the payments hereinbefore directed, the trustees should pay to certain nephews, grandnephews and grandnieces portions of the residue in tenths, and that in the event of the death of any one or more of certain persons mentioned as devisees and legatees the share should go to the " survivor or survivors of them." The testator's wife left no child or children her surviving, and all of the testator's sisters died after him and before the death of his wife who was thirty years younger than himself.

*Held*, that the testator intended to vest in each of his three sisters living at the time of his death the sum of $1,000 absolutely, subject only to the life estate of the testator's wife, and that the vesting of each of said legacies was not contingent upon the sisters surviving the testator's wife.

It is to be presumed that the testator did not intend to die intestate as to a certain small bequest.

The testator intended to limit the final distribution of his residuary estate in one-tenth shares to those who should be living at the expiration of the life estate. Such legatees had but a contingent interest in the residuary estate, depending, *first*, on the death of the testator's wife leaving no children her surviving, and *second*, upon said legatees surviving the life tenant.

The testator by using the words " survivor or survivors of them " meant to the survivor or survivors of the legatees named, and not to the heirs, executors or administrators or personal representatives of the deceased; *first*, because he did not so direct in terms, and *second*, because it is evident that he had in mind the death of some of his beneficiaries.

The rule that the court may construe a will so as to protect the children and direct descendants of the testator, if ever permissible, does not apply where the intention of the testator is clear and the rights of children or direct descendants are not involved.

CROSS-APPEALS by the plaintiff, Helena Day Snyder, and by the defendants, Louis J. Snyder and Samuel F. Engs, from a judgment of the Supreme Court in favor of the respondents, entered in the office of the clerk of the county of Kings on the 28th day of June, 1917, upon the decision of the court after a trial at the Kings County Special Term.

The judgment construed the last will and testament of Samuel F. Engs, deceased.

The plaintiff brought this action to obtain a construction of the will of Samuel F. Engs, and for an accounting by the defendants, executors and trustees. The testator died July 4, 1888, aged about sixty-seven years, a resident of Kings county, leaving a last will and testament dated October 12, 1886, which was duly admitted to probate by the surrogate of Kings county September 5, 1888. The controversy between the parties arises over the disposition of the residuary estate after the decease of the testator's widow, Carrie Engs (afterward, by remarriage, Caroline Engs Deshon), who died September 18, 1915. She left no child or children her surviving. The will, after directing payment of debts, gives to the wife of the testator his furniture, household effects, horses, cattle, etc., and then devises and bequeaths all the rest, residue and remainder of his property to his friends Lewis Hurst and Arthur Hurst, his nephew Edward L. Snyder and his wife, in trust: 1. To pay $50,000 to his wife. 2. To pay $1,500 to Mary Hurst and $2,500 to Lewis Hurst. 3. To pay $20,000 to Edward L. Snyder provided the executors and trustees are satisfied that he has no judgment creditors who might take the money to pay their claims. If there are such creditors, the trustees are to pay the interest and income of said $20,000 to Mississippi Snyder, the first wife of his nephew Edward (living at the time of testator's death but who died in 1904) during her life, " or until such time as they may deem it safe and proper to pay over said principal sum " to said Edward L. Snyder. 4. The trustees are directed to permit testator's wife to occupy his residence during her life. 5. After compliance with these directions, to pay the income from the balance of the trust estate to his wife during her life and in lieu of dower. 6. On the death of his wife, if she leaves a child or children by the testator her surviving, he gives all of the trust property to such child or children. Then follow the provisions of the will which lead to the controversy between the parties, and which are as follows:

" If at the time of the decease of my said Wife, she shall leave no child or children by me, her surviving, then I direct my Executors and Trustees to appropriate, apply and pay

over the rest, residue and remainder of my property and estate as follows, viz:

" To pay to my nephew Edward L. Snyder, Forty thousand dollars, subject to the same directions regarding the payment distribution and disposition thereof as are hereinbefore given relating to the bequest to him of Twenty thousand dollars, and if in case the said Edward L. Snyder be not then living, to pay over one-half part of such sum of Forty thousand dollars to his widow Mississippi Snyder, and the other half part I direct them to pay over to his then existing child or children, and if there be more than one such child, said remaining half part of said sum shall be equally divided between them share and share alike, and in case neither the said Edward L. Snyder nor his said Wife be then living, then I direct them to pay over the whole of said sum of Forty thousand dollars to their surviving child if there be but one and if more than one then to such surviving children to be equally divided between them, share and share alike.

" To pay to my nephew Samuel F. Engs, Junior, the sum of Ten thousand dollars.

" To pay to each of my sisters the sum of one thousand dollars.

" And upon the decease of my said Wife leaving no issue by me, her surviving then in addition to the payments hereinbefore directed to be made to the persons above named I direct my said Trustees, out of and from the said rest residue and remainder of my property and estate, to pay as follows, viz:—

" To pay to my nephew Samuel F. Engs, Junior, four tenths part thereof.

" To pay to my nephew Edward L. Snyder three tenths part thereof, subject to the same provisions concerning the payment disposition and distribution thereof as are hereinbefore given regarding the bequest to him of Twenty thousand dollars.

" To pay to my grand nieces and grand nephews other than my grand nephew Samuel F. Engs Snyder, and to the Survivor or Survivors of them and to be equally divided among them, one tenth part thereof, they being the children of Edward L. Snyder.

" To pay to my grand nephew and namesake Samuel F. E. Snyder, Son of Edward L. Snyder two tenths part thereof. If any one or more of the persons mentioned as devisees and legatees in the last preceding clause or section of this my Will be not living when such person or persons would be entitled to share in my property and estate as in said last preceding clause or section provided, then I give, devise and bequeath the share of such person or persons not then living to the Survivor or Survivors of them to be divided and distributed among them in the same relative proportion as in said last preceding clause is provided and set forth."

The learned court below construed the will so as to provide for the payment of $1,000 to the children and next of kin of each of the three sisters of the testator living at the time of his death, but who died before his widow, $3,000 in all.

From this portion of the decree the defendant Samuel F. Engs appeals. The other parties to the litigation do not complain of the judgment in this particular. The court found that the plaintiff had no right, title, interest or claim to any part of the estate, and from this adjudication the plaintiff alone appeals. The court found that three-tenths and two-tenths of the residue of the testator's property remaining after the death of his widow without issue, became vested upon her death, four parts or fifths thereof in the defendant Samuel F. Engs, Jr., a nephew, and one part or fifth thereof in the defendants Caroline E. O'Gorman, Anna S. Amy and Louis J. Snyder, grandnieces and grandnephew, children of a nephew Edward L. Snyder, who died after the testator but during the lifetime of the widow. From this portion of the decree, the plaintiff and the defendant Louis J. Snyder individually appeal. The sisters of Louis J. Snyder, Caroline E. O'Gorman and Anna S. Amy, do not appeal.

Substantially, the value of the residuary estate which came into possession of the substituted trustee was $440,000 in securities and $30,000 in real estate. Out of this, he made certain payments not in dispute, $40,000 to Louis J. Snyder, Mrs. Amy and Mrs. O'Gorman, surviving children of Edward L. Snyder; to Samuel F. Engs, Jr., $10,000, and four-tenths of the residue, which would be about $168,000.

The interests of the various parties appellant are, therefore, approximately:

1. The children and next of kin of the three sisters of the testator, $3,000 in all.

2. The plaintiff, who claims under the will of her husband Edward L. Snyder, three-tenths of the residuary estate, and also the two-tenths given to the infant son of Edward L. Snyder, in all five-tenths, approximately $210,000. The judgment appealed from excludes the plaintiff from any interest in the estate.

3. The appellant Louis J. Snyder, individually, one of the three children of Edward L. Snyder, deceased, claims that the five-tenths interest of Edward L. Snyder, approximately $210,000, belongs to his sisters and himself, amounting to about $70,000 each. The judgment appealed from awards this sum, four-fifths to Samuel F. Engs, Jr., or $168,000, and one-fifth, $42,000, divided between Snyder and his two sisters, $14,000 each. Therefore, Louis J. Snyder under the decree in this particular, receives $14,000 instead of $70,000. His sisters do not appeal.

*Lawrence E. Sexton,* for the plaintiff, appellant.

*Otto Horwitz,* for the appellant Louis J. Snyder.

*Cyrus V. Washburn [John E. Ruston* with him on the brief], for the respondent, appellant, Samuel F. Engs, Jr.

*Mortimer W. Byers,* for the respondent Louis J. Snyder, as trustee, and others.

*Edward J. McGuire,* for the respondent Anna S. Amy.

*James H. Deignan,* for the respondent Caroline E. O'Gorman.

*George E. Blackwell,* for the respondents Annie B. Ostrander and others.

KELLY, J.:

There is no doubt or confusion as to the legal principle which must govern the construction and interpretation of this will. It has been stated over and over again, and it is that the intention of the testator as expressed in the will must control. Courts are not to make new wills for those

who have gone from this world, nor can we speculate on the justice or injustice of the testator's disposition of his property clearly expressed, as long as it is not opposed to law or public policy. The will having been admitted to probate, the testator having left no children or direct descendants surviving him, we are not concerned with the fact that having cared for his wife, he may have favored one nephew as against the other. He might do what he willed with his own, and left his fortune to strangers. The learned counsel for the parties have cited abundant authorities and precedents and have given much time and research to the always vexed question of contingent and vested remainders; their arguments and citations have been of much assistance to the court. But when the terms of a will are plain and unambiguous, it is unnecessary to resort to intricate and refined rules of construction. Out of the abundance of decisions and authorities cited, we select the following statements of the fundamental principles which must govern us, as laid down by the Court of Appeals: " The intention of the testator being reasonably clear it is quite unnecessary to discuss the decisions made in other cases involving the vesting of property held in trust. Rules for the construction of wills are for the sole purpose of ascertaining the intention of the testator, and if the intention is clear and manifest it must control, regardless of all rules that have been formed for the purpose of determining their construction." (*Cammann* v. *Bailey*, 210 N. Y. 19, 30, and restated in *Fulton Trust Co.* v. *Phillips*, 218 id. 573, 582.) And in *Salter* v. *Drowne* (205 N. Y. 204) the court says: " The intention of the testatrix, so long as it is not contrary to some statute or to public policy, must govern. We must look for that intention in the will itself. Because wills differ in the forms in which testators express their intention it is difficult and almost impossible ·to base one decision unqualifiedly upon another. Rules for the construction of wills can only. be applied when they will aid in such construction. It is a rule in the construction of wills frequently asserted and urged now by the appellants that the law favors the vesting of estates. Like all other rules in construing wills it cannot be applied when it is found that by so doing the intention of the testator would not be carried out. The law does not

hold that the trust estates mentioned are vested if it is found
that the testator intended that the estate should not vest
for a specified time and until the happening of specified
events." Thus the court of last resort reiterates the rule
so often announced. The intention of the dead man as
found in his will governs everything else. In ordinary dis-
putes and litigations the contesting parties are here to battle
for their respective contentions. In the case of a will, the
voice of the man who made it is stilled, the hand that signed
and sealed it is powerless and dead, and it is one of the
greatest of the many responsibilities placed upon the courts
to see to it that this silent evidence of his desire with regard
to his property and estate should be made effective and
should be carried out "according to his intention," undis-
turbed by the clamor of conflicting litigants.

Taking up the disputed provisions of Mr. Engs' will, let
us consider first the claim of the children, personal repre-
sentatives and next of kin to the sum of $3,000 bequeathed to
the sisters of the testator. The court below held that the
testator intended to vest in each of his three sisters living at
the time of his death the sum of $1,000 absolutely, subject
only to the life estate of the testator's wife, and that the
vesting of each of said legacies was not contingent upon the
sisters surviving the testator's wife.

Defendant Samuel F. Engs alone appeals from this pro-
vision of the judgment. As will be seen from the language
of the will quoted above, the testator having given his prop-
erty to the trustees to hold during the lifetime of his wife,
gave certain directions as to what should be done upon her
death without issue. In that event he directed his executors
to pay to his nephew Edward L. Snyder $40,000, or, if he
should be dead, $20,000 to his widow Mississippi and $20,000
to his children, and in case both Snyder and his wife were
dead, the entire $40,000 to the surviving children. Next he
directed them to pay to Samuel F. Engs $10,000. Then
follows the clause "To pay to each of my sisters the sum of
one thousand dollars." All of the testator's sisters died after
him and before the death of his wife. After his death she
remarried. He was sixty-seven years of age when he died
in 1888. He married his second wife, referred to in the will,

in 1881. The court below found she was " many years his junior," it is said thirty years younger than the testator; she survived him twenty-seven years.

Counsel for the children and personal representatives of the three sisters argues that as the wife was so much younger than testator's sisters, who he says must have been about his age, the bequest to them would have been meaningless if it was to be contingent upon their surviving the wife, and so would have been a frivolous and illusory provision. He urges that the testator must have known that in all human probability the sisters would not be alive at the death of the wife, and still this provision is found in the final residuary distribution after his wife's death. If then made, counsel argues it had to be made to the children or representatives of the sisters.

Counsel for the appellant Engs insists, on the contrary, that the primary scheme of the will was a devise to trustees to hold for the life of the wife and then pay over to his issue, and that none of the individuals whom he describes as " secondary or substitutionary beneficiaries," including the sisters, had any right in the estate until the death of the wife. He says it was upon her death that the right became vested, and that there is no word of gift in connection with any secondary legacy. But as to this last argument, the same might be said of the legacies of $50,000 to the wife, and $4,000 to the Hursts payable immediately on the testator's death. These last legatees received their legacies by a direction to the trustees to pay them exactly as in the case of the sisters. It would not be claimed that these legacies did not vest because of absence of words of gift or grant.

While there is some force in the argument of the appellant Engs against the interpretation of this clause in the will by the learned trial justice, and the plaintiff who has been denied all interest in the estate by the judgment insists that by the same rule of interpretation she is entitled to her husband's share as devisee under his will, we think the intention of the testator with regard to this payment to his sisters may be ascertained by considering his disposition of his residuary estate as a whole. And we find that on the death of the widow without issue, the testator provided for the distribution

Second Department, March, 1918.          [Vol. 182.

of the residue of the estate to two groups. The first group, (a) Samuel F. Engs $10,000; (b) Edward L. Snyder or his children in the event of his death $40,000; (c) each of the testator's sisters $1,000. After these payments are made, the testator designates the second group, the precise language of the will being: "in addition to the payments hereinbefore directed to be made to the persons above named," and he provides for the division of the residue into one-tenth parts to be divided between his nephews and grandnephews. The first group was to share $53,000, the second group the remainder of the estate after payment of this $53,000. The intention of the testator seems to us to be very clear that on the death of the wife without issue the trustees were first to subtract $53,000 from the estate, and, having done this, to distribute the remainder in one-tenth parts. Those entitled to the one-tenth interests were not to take one-tenth of the legacies given to the persons composing the first group. The tenth interests could only be ascertained after these prior legacies were paid. We think the testator intended these legacies of $10,000 to the defendant Engs, $40,000 to Edward L. Snyder or his children and $1,000 to each of his sisters, to vest. The alternatives are (1) that the rights of the sisters vested; (2) that if they predeceased him he died intestate as to the money bequeathed to his sisters, or (3) that if they predeceased the testator the legacies should go to those who took by tenths. The last alternative was contrary to the express directions of the will. The presumption is that testator did not intend to die intestate as to this small bequest; the only alternative remaining is that he intended the legacy to belong to the sisters, and that as to this legacy of $1,000 to each of his sisters, the words to "appropriate apply and pay over" do not attach to the substance of the gift.

We conclude, therefore, that the disposition of this matter by the trial justice was right and should be affirmed.

Proceeding next to the appeal of the plaintiff from the provision of the judgment which decrees that she has no interest in the estate of the testator, the plaintiff claims under the will of her husband, Edward L. Snyder, a nephew of the testator, to whom various payments of money were directed to be made by the will and who was to receive

three-tenths of the residue upon the death of testator's wife without issue. There was also a direction to the trustees to pay two-tenths of the residue to Samuel F. Engs Snyder, a son of Edward L., and a grandnephew of the testator and his namesake, who died intestate and without issue in his father's lifetime. The plaintiff asserts that the father, Edward, inherited his son's two-tenths, and that his total interest in the residue of testator's estate was, therefore, five-tenths — one-half. Edward L. Snyder, the nephew, died February 21, 1913, after the testator's death but during the lifetime of his widow. He left him surviving his widow, the plaintiff, and three children by his first wife, viz., the defendants Louis J. Snyder, Caroline E. O'Gorman and Anna S. Amy. Edward L. Snyder left a will dated December 12, 1912, proved May 1, 1913, by which, after certain minor legacies, he left everything to his second wife, the plaintiff. The devise is in paragraph 4 of the will. "*Fourth.* All the rest, residue and remainder of my estate, both real and personal, of whatsoever kind and wheresoever situated, and including such interests in the estate of Samuel Franklin Engs, deceased, as I may have at the time of my death, or of which I have any power of disposition, I give, devise and bequeath to my wife, Helena Snyder, her heirs and assigns absolutely forever." The plaintiff married Edward L. Snyder in 1906; she did not know the testator Samuel F. Engs, and never saw him. She was thus a stranger to the blood of the testator.

The plaintiff, appellant, properly states that the issue so far as she is concerned depends upon whether the right of Edward L. Snyder to this three-tenths of the residue was a vested or a contingent interest, that is, whether it vested at the death of the testator or was contingent upon his surviving the widow, the life tenant, and the same question arises as to the two-tenths of the residue directed to be paid to the deceased son of Edward L. Snyder.

The discussion of the claim of the plaintiff, appellant, also involves the claim of Louis J. Snyder, defendant, appellant. The same principles apply to each of them. If the right of Edward L. Snyder and his son Samuel F. E. Snyder to these payments did not vest on the death of the testator but was contingent upon their surviving the testator's widow, the life

tenant, neither the plaintiff nor the defendant Louis J. Snyder has any claim to this five-tenths of the residue, the plaintiff claiming under the will of her husband, and Louis J. Snyder claiming under the survivorship clause at the end of the residuary devise.

The language of the residuary clause in the will of Samuel F. Engs has already been recited. The plaintiff argues that the contingency on which the vesting of the legacies depended was the birth of a child to Samuel F. Engs, that this was what the testator had in mind in creating the trust, and that this contingency was necessarily determined at the date of the testator's death or within nine months thereafter; that the legacies vested in Edward L. Snyder at the date of the testator's death, subject to being divested by the birth of a posthumous child. But this argument imports a condition into the will which was not placed there by the testator, and entirely overlooks the conditions which were written in the instrument. The plaintiff endeavors to show by other language of the will with regard to the payments of $20,000 and $40,000 to be made to Edward L. Snyder and the conditions attached thereto, that the testator's intention was to vest Edward L. Snyder's interest in the estate as of the date of testator's death. She argues that the initial payment of $20,000 to Edward was conditional upon the trustees being satisfied *at the time of testator's death* that there were no judgment creditors who would seize it. The trustees were satisfied, and it was paid. She says the same condition attached to the second payment of $40,000 to be made on the death of the life tenant — that the language of the will with regard to this $40,000 payment is " subject to the same directions regarding the payment distribution and disposition thereof as are hereinbefore given relating to the bequest to him of Twenty thousand dollars." It will be noted, however, that the will provided that in case Edward " be not *then* [*i. e.*, on the decease of the testator's wife] living," the $40,000 was to go one-half to his first wife Mississippi, and the other half to his children, and if Mississippi and Edward were both dead on the death of the testator's wife the whole $40,000 was to go to testator's children. Again the suggestion that as to the $40,000 and the devise of the three-tenths

interest payable on the death of testator's wife, the testator's intention was that the trustees were to ascertain whether there were any creditors of Edward L. Snyder *at the time of the testator's decease,* and, if not, that these sums should be paid over, seems very far-fetched. It was the desire of the testator to save Edward L. Snyder's interest to his wife and children if he had creditors who might take it, and the suggestion that this condition attached to the $40,000 bequest and the residuary three-tenths interest, depended on whether Edward had creditors in 1888, the date of testator's death, twenty-seven years before the death of the widow, is hardly worth discussing. Of course, if Edward L. Snyder survived the widow, the plain intention of the testator was that in 1915, when the widow died, the trustees, before paying over the $40,000 or the three-tenths to Edward, must be satisfied that it would go to him and not to creditors. Edward might have been solvent in 1888 when the testator died and when the trustees paid him the initial $20,000, and bankrupt in 1915 when the widow died. But, if the plaintiff's suggestion is sound, the 1915 creditors could take nearly $200,000 of the testator's money to the exclusion of Edward and his children. If Edward were alive at the date of the widow's death, the intention of the testator was that the trustees should ascertain his financial condition at that time in the same manner as directed with regard to the initial payment of $20,000 on the testator's death in 1888. If he was alive in 1915 and was financially sound, the two-tenths inherited from his deceased son would then be payable. If he was bankrupt or had judgments against him, the will expressly provided that the distribution of the $40,000 was to be made in the same manner as directed with regard to the initial $20,000. The will is faulty in this regard because, if he were living and if there were creditors in 1915, the trustees could not pay the interest and income from the $40,000 to Mississippi Snyder (the testator's first wife), as she was dead, and nothing is said in the direction with regard to the $20,000, as to what was to become of the principal in that case. But we think that the testator's intention is clearly shown, because when he speaks of this $40,000 payment to be made on the death of his wife, the life tenant, he evidently had in mind the fact

that there might be considerable lapse of time between his death and the death of his wife, and that Mississippi Snyder might then be dead and Edward as well, and his intention is clearly expressed that if Edward and Mississippi are both dead, the payment shall be made to their children.

The plaintiff, appellant, argues at some length that the interpretation of the will by the learned trial justice deprives the children of Edward of the three-tenths of the estate given to their father, and gives it almost entirely to Samuel, and with the same result as to the legacy of two-tenths to testator's namesake and grandnephew Samuel, the son of Edward. Counsel says that the testator's nephew Edward was his business associate, and that the will shows solicitude on the part of the testator for Edward and his children. He cites the provisions to protect Edward's interest from creditors, and says that, looking at the will " broadly and disregarding all technical refinements of language, it is perfectly clear. that the testator intended, in case he left no issue him surviving, that his wife should have the enjoyment of the income of the residuary estate for life, and that his two favorite nephews, one of them a namesake and the other whose son was a namesake, should divide the residuary estate as remaindermen in two portions, one of them receiving four-tenths and the other receiving for himself and·for others of his family, six-tenths." He says it is quite inconceivable that the testator intended that in the case of the death of either one of these two nephews, after his own death and prior to the death of the life tenant, the entire residuary fund, or substantially all of it, should go to the other of the two nephews, or to the family of such other, and that it is unreasonable to suppose that the testator intended to cut off the issue of his nephew Samuel F. Engs. He argues that it is equally unreasonable to suppose that the testator intended, in case of the death of Edward L. Snyder before the life tenant, the greater part or perhaps all of the three-tenths left to him should go to swell the four-tenths left to the other nephew, Samuel F. Engs, instead of to Edward L. Snyder's own children or legatees. Granting, for the purposes of the argument, the persuasiveness of the· plaintiff's reasoning, it seems to us the answer is that the testator has done just this

thing, and of course the plaintiff's argument as to testator's love and affection for those of his blood is somewhat weakened by the fact that under her construction of the will the estate goes to her — a woman whom the testator did not know, never saw, and who is a stranger to the blood, to the exclusion not only of the surviving favorite nephew of the testator, but also to the exclusion of Edward's children, for whose cause she is so solicitous. The plaintiff, appellant, argues that the construction given the will in the court below *might* have caused intestacy. It did not have any such result, and as we have seen, that is not a sufficient reason to do away with express provisions in a will. (*Salter* v. *Drowne*, *supra*.) Counsel quotes Chancellor KENT's (4 Kent Comm. [13th ed.] *206) statement of the well-established principle: " It is not the uncertainty of enjoyment in future, but the uncertainty of *the right* to that enjoyment which marks the difference between a vested and contingent interest" (*Lewis* v. *Howe*, 174 N. Y. 347) and Real Property Law (Consol. Laws, chap. 50 [Laws of 1909, chap. 52], § 40) defining a vested estate: " It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates." He urges that the case of *Matter of Embree* (opinion by WILLIAMS, J., 9 App. Div. 602; affd., on opinion below, 154 N. Y. 778) is directly in point. There the court said: " Even though there be no other gift in the will than that contained in a direction to pay or distribute in the future, yet if such payment or distribution appear to be postponed for the convenience of the estate only (as to let in some intermediate estate), the ulterior legatees will take a vested interest at the death of the testator. This rule does not apply to a will where the postponement of the payment or distribution is upon any contingency, but only to a will where the sole object of the postponement is to let in an intermediate estate."

The answer to this, and in fact to all the cases cited by the appellant and to the argument that the right to the three-tenths and two-tenths of the residue vested at the death of the testator, is that the right of Snyder and the other secondary beneficiaries to share in the residue of the estate

was expressly dependent upon a contingency set forth in the will. When the testator made the will in 1886, while he was a man over sixty he had married a young wife. It is very evident that he contemplated the possibility that he might have children by her. He had none by his first wife. It was not an unreasonable or impossible anticipation on his part. Indeed, on the record before us, we do not know but that he had a child by his second wife who may have died in infancy before her. But the whole scheme of the will is based on this anticipation of children born to him. That was a contingency in his view and provided for, which would have destroyed the right of the Snyders to receive a penny. That was the possibility and the hope that he had when he executed the will, and which we must assume continued with him up to his death. That was the contingency which is before us, and which brought about the "uncertainty of the right to the enjoyment" in the Snyders at the date of the will and at the date of the testator's death. The fact that nine months elapsed after that death without the birth of a child, does not help the Snyders in their claims under the residuary clause. Here was a clearly expressed contingency which removed the gifts to these beneficiaries from the list of cases where the postponement of enjoyment is simply to let in an intermediate estate. We will not attempt here to go over the cases cited in the respondents' brief of other wills and other testamentary provisions. The principle is clearly laid down even in the *Embree Case* (*supra*), which the appellant says is on all fours with the case at bar. Again, it is very evident on reading this will that the testator intended to limit the final distribution of his residuary estate in one-tenth shares to those *who should be living at the expiration of the life estate.* It is impossible to overlook the fact disclosed by the will, that the testator had before him the possibility of the death of some of the recipients of his bounty during the life of his wife. Clearly the $40,000 gift to Edward L. Snyder was contingent upon his surviving the wife, because it is expressly provided that in case neither Snyder nor his wife shall be alive at the time of the decease of testator's wife, the $40,000 shall be paid to their children. And when he provided for the payment of the three-tenths of the residue to Edward and the

two-tenths to Edward's son Samuel, he expressly says: " If any one or more of the persons mentioned as devisees and legatees in the last preceding clause or section of this my Will be not living when such person or persons would be entitled to share in my property and estate as in said last preceding clause or section provided, then I give, devise and bequeath the share of such person or persons not then living to the Survivor or Survivors of them " (the capital letters appear in the photographic copy of the will) " to be divided and distributed among them in the same relative proportion as in said last preceding clause is provided and ·set forth."

We think there is no difficulty in ascertaining what the testator meant by the " last preceding clause or section " of the will. The clauses or sections were not numbered, but it clearly appears that the testator had reference to the residuary section in which he directed the distribution of the " rest, residue and remainder of my property " in tenths. How it can be claimed that Edward L. Snyder had a vested right in the three-tenths as of the date of the testator's death in 1888, twenty-seven years before the decease of testator's wife in 1915, is unexplainable, not only because of the contingency of the birth of a child to testator which would have defeated the claim, but here is an express direction that if Snyder is not living when he " would be entitled to share in my property and estate as in said last preceding clause or section provided " the money goes to someone else. He was not entitled to share in the residuary estate until the decease of the wife, and to say that he had any vested right before that time is contrary to the express provisions of the will. For these two reasons, the plaintiff must fail, because her husband had but a contingent interest in the residuary estate of the testator, depending, *first,* on the death of testator's wife leaving no children her surviving; *second,* upon his surviving the life tenant. These same considerations apply to the direction to pay two-tenths of the residue to Samuel, the son of Edward.

Therefore, the trial judge was also right in his judgment against the plaintiff, which should be affirmed.

The remaining appeal of Louis J. Snyder, individually,

is largely disposed of in the foregoing discussion of the plaintiff's case. Edward Snyder having died before the widow and having inherited nothing, the disposition of the residuary estate depends upon the meaning of the survivorship clause. Edward Snyder was dead, and his son Samuel was dead; their shares under the residuary clause were three-tenths and two-tenths respectively. The will says that, in case of the death of any of the persons mentioned in the residuary clause before the life tenant, " then I give, devise and bequeath the share of such person or persons not then living to the Survivor or Survivors of them to be divided and distributed among them in the same relative proportion as in said last preceding clause is provided and set forth." It is argued that the words " Survivor or Survivors of them " should be construed to mean the personal representatives of the deceased. Such construction would enable Snyder's children to take the gift as the survivors of Snyder, rather than have it go out of the Snyder family to the other nephew, the defendant Engs. But this cannot be done without doing violence to the plain language of the testator in the will. The reference is to " any one or more of the persons mentioned as devisees and legatees in the last preceding clause " of the will. These persons are: 1. Samuel F. Engs; 2. Edward L. Snyder; 3. Testator's grandnieces and nephews other than Samuel (three in number); 4. Samuel. We think that when the testator said that in the event of the death of any of these six beneficiaries, the share would go to the "·Survivor or Survivors of them " he meant to the survivor or survivors of the six people, not to the heirs, executors or administrators or personal representatives of the deceased; *first,* because testator did not so direct in terms, and *second,* because it is evident from a reading of the will that the testator had in mind the death of some of his beneficiaries, and in each case if he so desired, he provided that the share should go to the children. This is true immediately before this *final* residuary clause, where testator provided for the payment of the $40,000 to Edward, or to his widow Mississippi, and the children, in case of his death. The learned counsel for the defendant, appellant, Louis J. Snyder urges that grammatical rules and close analysis of language do not govern (citing *Connelly* v. *O'Brien,*

166 N. Y. 408), and quotes, " the court ' anxiously lays hold
of slight expressions as a ground for avoiding a construction
which in all probability defeats the actual intention ' " (*Matter
of Crawford*, 113 N. Y. 376), and calls attention to the language
of Surrogate KETCHAM that a " gift shall not be contingent
if by the utmost effort and cunning a contrary intention can
be detected in the will." (*Matter of Lotz*, 92 Misc. Rep.
685.) Certainly the courts have used very strong language
in declaring the principle that children and direct heirs of
a testator must not be disinherited through any refined con-
struction of the language of a will, or through ambiguous
or uncertain provisions (*Matter of Manning*, 50 App. Div.
407; *Du Bois* v. *Ray*, 35 N. Y. 166, citing the case of *Earl of
Clanricarde*, Hob. 277b), and Chancellor WALWORTH said that
judges may take liberties in construing wills to effect the
testator's intention. (*Pond* v. *Bergh*, 10 Paige, 152.) But
we are not dealing in the present case with children or direct
descendants of the testator. These two nephews, Engs and
Edward L. Snyder, were not all of the nephews of the testator.
He had, it is true, selected them as the principal recipients of
his bounty, but as to their children no such intention is shown.
Snyder's children were not to share equally in the residue.
No mention is made of Engs' children. In the bequest to
Snyder and his children in the residuary clause, the testator
omitted all reference to " heirs," or " representatives," using
the word " survivor," which has a different meaning when
used in connection with a devise to a class such as this. The
residuary estate went to six people, and in the event of the
death of any of them, to " the Survivor or Survivors of them,"
to be divided " in the same relative proportion as in said
last preceding clause is provided and set forth." If he meant
that the children of one of the beneficiaries was to take his
parent's share, why the direction " to be divided   *   *   *
in the same relative proportion " as already set forth? If
that were his intention, he had already made the division
into tenths. If this were a case of disinheriting the children
or direct descendants of the testator, and the testator's inten-
tion was not reasonably clear, it may be that the court should
comply with the request of the appellant and " lay hold "
of the will, and by " cunning " and " subtle " methods, by

transposition of words or supplying or rejecting others, or in other words by main force, construe the will so as to protect the children or direct descendants, but it is sufficient to say that if this method of construing a will is ever permissible, no case is presented here for the use of such extreme methods. In *Savage* v. *Burnham* (17 N. Y. 579) the court said that the case of nephews and nieces stands upon a different footing from that of a man's own children. Nature and law both make the distinction, and presumptions and implications justifiable in one case might be very unreliable, and for that reason inadmissible, in the other. There is nothing in this will to justify the claim that the children of Edward L. Snyder should be allowed to take by representation. To construe the words " Survivor or Survivors " as meaning heirs or personal representatives would be a forced construction. (*Crowder* v. *Stone*, 3 Russ. 217.) In the case cited, the lord chancellor contrasts such interpretation with what he calls the " natural meaning " of the words. It is a construction which the court may sometimes be compelled to adopt in order to accomplish the intention which appears on the whole of the will. But in the language of the chancellor in the case cited, " in looking at the language and the provisions of this will, I do not find any such necessity; and it seems to me, that the words ' survivor and survivors ' are here to be taken in their natural meaning."

The learned trial justice appears to have decided the various questions arising on the construction of the will correctly and in accordance with the principles enunciated for the guidance of the courts of justice in such cases. The judgment appealed from should be affirmed.

The judgment should be affirmed, with one bill of costs to respondents the children and heirs of the deceased sisters of testator against the defendant, appellant, Engs, and with costs to respondent Engs payable out of the estate.

JENKS, P. J., THOMAS, RICH and PUTNAM, JJ., concurred.

Judgment affirmed, with one bill of costs to respondents the children and heirs of the deceased sisters of testator against the defendant, appellant, Engs, and with costs to the respondent Engs payable out of the estate.