James R. Wood et al., Executors, etc., Respondents, *v.* Viola Yates Mitcham et al., Appellants.

*13 ∤-3 2/.*

$$\begin{array}{c|c} 92 & 375 \\ \hline 161 & 22 \end{array}$$

R. died, leaving a will, prior to the execution of which, C., a married daughter, had died, leaving four children, a son and three daughters. Her husband had remarried and had by the second marriage two children, daughters, who were of no kin to R. All of said children survived him. By his will he directed a seventh part of his residuary estate to be subdivided into four equal shares, to be held in trust, one for each of the four children of C. during their respective minorities, and then to be paid over. Substantially similar provisions were made for the disposition of each of said shares in case the beneficiary died before coming of age. The direction as to the share of E., one of the testator's said grandchildren, was that in case of such death and in default of issue "living at her death, then to pay over the same with its accumulations to her then living brother and sisters and the issue of any deceased brother or sister who shall have died having lawful issue then living, each then living brother and sister taking one equal share thereof, and the issue of any deceased brother or sister taking by representation the share the parent of such issue would have taken if then living." E. died before coming of age leaving no issue, but leaving her brother and two sisters and her two half sisters surviving. In an action for a construction of the will, *held*, that her share went to her brother and sisters of the full-blood, and that her sisters of the half-blood were not entitled to any portion thereof; that as the contrary construction would result in diverting a portion of the testator's estate from his lineal descendants to strangers to his blood, the burden was upon them to establish that the testator in using the word "sisters" intended to include them; that the presumption to the contrary could only be overcome by clear and unequivocal language; and, therefore, the fact that in the direction as to the disposition of the shares of two of the other of his said grandchildren in case of such death the word "brothers" was used instead of "brother" as in the clause quoted, did not show such an intention.

Where a will is capable of two interpretations that one should be adopted which prefers those of the blood of the testator to strangers.

(Argued March 22, 1883 ; decided May 8, 1883.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made the first Monday of October, 1881, which af-

firmed a judgment entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiffs as executors and trustees under the will of James Rowe, deceased, to obtain a construction of said will.

The substance of the portions of the will in question and the material facts are stated in the opinion.

*Geo. G. De Witt, Jr.,* for appellants. The intention of the testator, if not inconsistent with the rules of law, must govern ; and this intention must be ascertained from the whole will taken together. (*Hone* v. *Van Schaick,* 3 Comst. 536, 540, 541 ; *Scott* v. *Guernsey,* 48 N. Y. 106, 120–121 ; *Quinn* v. *Hardenbrook,* 54 id. 83, 86.) If there are two probable interpretations of the will, that one is to be adopted which prefers the kin of the testator to strangers. (4 Kent's Comm. [11th ed.] 535 ; *Quinn* v. *Hardenbrook,* 54 N. Y. 86 ; *Van Kleek* v. *Dutch Church,* 20 Wend. 457 ; *Scott* v. *Guernsey,* 48 N. Y. 106 ; 60 Barb. 163 ; *Areson* v. *Areson,* 3 Denio, 461 ; *Kelso* v. *Lorillard,* 85 N. Y. 182 ; *Gazlay* v. *Cornwell,* 2 Redf. 139 ; *Valentine* v. *Wetherill,* 31 Barb. 635.) The testator is presumed to have used words in the primary or ordinary sense, unless the contrary appears from the context. (*Cromer* v. *Pinckney,* 3 Barb. Ch. 475 ; *Mowatt* v. *Carow,* 7 Paige, 328 ; *Lawrence* v. *Hebbard,* 1 Bradf. 252 ; *Hone* v. *Van Schaick,* 3 N. Y. 538 ; *Kiah* v. *Grenier,* 56 id. 220 ; *Palmer* v. *Horn,* 84 id. 516 ; *Clark* v. *Pickering,* 16 N. H. 284 ; *Wheeler* v. *Clutterbuck,* 52 N. Y. 71.) No change of one word for another can ever be made, unless it becomes necessary to carry into effect the " clearest intent" of the testator, or the word used conflicts with his plainly expressed intention. (Redfield on Wills, 471, 491, 492, *n.*)

*Samuel Hand* for respondents. By the absolute and unqualified direction to sell and convert into money all the testator's real and personal property, and invest the proceeds for the uses and purposes therein specified, the real estate was con-

verted into money. (*Moncrief* v. *Ross*, 50 N. Y. 431, 436, 437.) The intent of the testator is to be gathered from the words of the will itself. (*Mann* v. *Mann*, 14 Johns. 1; *Arcularius* v. *Geisenheimer*, 3 Bradf. 64; id. 114; *Westcott* v. *Cody*, 5 Johns. Ch. 334; *Hone* v. *Van Schaick*, 3 Barb. Ch. 506; *Lovett* v. *Kingsland*, 44 Barb. 560; *Lovett* v. *Gillender*, 35 N. Y. 617, 621; *Cramer* v. *Pinckney*, 3 Barb. Ch. 466, 475.)

RAPALLO, J. The will of James Rowe was dated February 19, 1868, and he died October 18, 1871. Before the date of this will, viz.: in 1856, the testator's daughter, Cordelia Yates, wife of Charles Yates, had died, leaving four children, the issue of her marriage with said Charles Yates, viz.: one son, Henry Yates, and three daughters, Viola, Adelaide and Catharine, all of whom survived the testator.

Charles Yates, the father of these children, had, after the death of his wife Cordelia, and during the life-time of the testator, viz.: in 1860, remarried, and by his second marriage had two children, viz.: Frances Yates, born in 1864, and Stella Yates, born in 1866. These two children also survived the testator. They were, however, of no kin to him.

The testator by his will, after providing for his widow and son, directed that the residue of his estate be divided into seven equal parts. Six of these parts he directed to be held in trust for six daughters named in the sixth clause of his will, and the remaining one-seventh part he disposed of by the seventh clause of the will for the benefit of his four above-named grandchildren, the issue of his deceased daughter, Cordelia Yates. The construction of this seventh clause is the subject of the present controversy.

By this clause he directed his executors to subdivide the said seventh part into four equal sub-shares, and to invest and accumulate one of said sub-shares for the benefit of each of said four grandchildren, Henry, Viola, Adelaide and Catharine Yates, during their respective minorities, and to pay over to each of them his or her share, with its accumulations, on his

or her arriving at age. Provision was made for the disposition of the shares of any of said four grandchildren who might die before attaining the age of twenty-one years. The direction as to the share of each of said grandchildren is substantially the same, with some verbal differences to which importance has been attached, and which will be remarked upon hereafter. The direction in respect to the sub-share of his granddaughter, Catharine, is the one immediately under consideration, and is in the following words :

" And to invest and accumulate the remaining one equal fourth part until the arrrival at full age, or death, whichever shall first happen, of my granddaughter, Catharine Yates, child of my deceased daughter, Cordelia Yates, and upon her arrival at the age of twenty-one years, to pay over the same, with its accumulations, to her, and in case of her death prior to attaining said age, to pay over the said fourth part, with its accumulations, to her lawful issue. And in default of issue of my said granddaughter, Catharine, living at her death, then to pay over the same, with its accumulations, to her then living brother and sisters, and the issue of any deceased brother or sister who shall have died leaving lawful issue then living, each then living brother and sister taking one equal share thereof, and the issue of any deceased brother or sister of hers taking by representation the share the parent of such issue would have taken if then living."

After the death of the testator, viz. : November 30, 1874, Catharine Yates died, being then a minor and without issue, leaving her surviving her brother, Henry, and her two sisters, Viola and Adelaide, and also her two half-sisters, or sisters of the half-blood, Frances and Stella Yates, and the question now presented is whether it was the intention of the testator that upon the death of his granddaughter, Catharine, under age and without issue, her share should go to his surviving grandchildren, Henry, Viola and Adelaide, and their issue, or whether he intended that Frances and Stella Yates, the children of Charles Yates by his second marriage, and strangers to the blood of the testator, should participate therein. It is

claimed on their behalf that they answer the description of sisters of Catharine, and are entitled to take as such, and that the clause in question, read in connection with other parts of the will, shows that the testator so intended.   Bouvier's Law Dictionary defines " sister " as " a woman who has the same father and mother with another, or one of them only.   In the first case she is called sister simply; in the second, half-sister." Worcester defines " sister " as " a female born of the same parents."   The word is defined by Webster as " a female whose parents are the same as those of another person." Blackstone (vol. 2, p. 227) defines a kinsman of the whole blood as " he that is derived, not only from the same ancestor, but from the same couple of ancestors."   (*Clark* v. *Pickering*, 16 N. H. 284; *Wheeler* v. *Clutterbuck*, 52 N. Y. 71.)

The statute of descents (1 R. S. 752, § 6) does not apply to a case like the present, but only to the case of relatives inheriting from the same ancestor, or from each other, and recognizes the distinction between relatives of the full blood and of the half-blood.

It is not necessary to enter into a discussion whether, in view of the definitions referred to, the primary meaning of the word " sister " is to be regarded as confined to a sister of the full blood, or whether it includes a sister of the half-blood, for we have a well-settled rule, applicable to the present case, which is more satisfactory than mere definitions, viz. : that where a will is capable of two interpretations, that one should be adopted which prefers those of the blood of the testator to strangers. (Kent's Com. [11th ed.] 535; *Van Kleeck* v. *Dutch Church*, 20 Wend. 457; *Quinn* v. *Hardenbrook*, 54 N. Y. 86; *Scott* v. *Guernsey*, 48 id. 106; *Kelso* v. *Lorillard*, 85 id. 182.)

Inasmuch as the construction claimed by the respondents would result in diverting the property left by the testator, from his lineal descendants, to strangers to his blood, the burden is upon them to establish that in using the term " sisters," the testator intended to include the half-sisters of his grandchildren named in the seventh clause.   The presumption is to

the contrary, and this presumption can be overcome only by clear and unequivocal language. It cannot be contended that if the direction, " and in default of issue of my granddaughter Catharine, living at her death, then to pay over the same with its accumulations to her then living brother and sisters," stood alone, her half-sisters, who were of no kin to the testator, could be deemed to be included. The rule before referred to would require us so to construe this provision as to prefer her brother and sisters of the full blood, who alone were of the blood of the testator. But it is contended that the words next following manifest a different intent. The words are, " and the issue of *any deceased brother or sister* who shall have died leaving lawful issue then living, *each then living brother and sister* taking one equal share thereof, and *the issue of any deceased brother or sister* of hers taking by representation the share the parent of such issue would have taken if then living." Stress is laid upon the words italicised as showing that the testator contemplated that more than one brother of his granddaughter might survive her, or one might have died leaving issue, and another might survive, but inasmuch as she had but one brother at the date of the will, and her mother had long been dead, she could have no other brother unless it were a half-brother thereafter born, an event which was possible, as her father, Charles Yates, was then living. From this it is argued that the testator intended that such after born half-brother should participate in her share, in the contingency mentioned, and that this shows an intention that her half-sisters should participate in like manner.

In our judgment this circuitous mode of reasoning, depending on such close verbal criticisms, falls far short of that clear demonstration of intention which is necessary to authorize a construction of the will which will divert the testator's property from his own lineal descendants for the benefit of strangers to his blood. The language is the ordinary verbiage of a conveyancer, and though perhaps not the most accurate which might have been used, is quite consistent with the interpretation that all it was intended to express was that if either or any

of the persons to whom the contingent remainder was limited, and who consisted of a brother and three sisters, should die without issue, the property should go to the survivors or survivor, and to the issue of any of those deceased, such issue taking by representation. It could not be known whether the deceased might be the brother or one or more of the sisters, and the language was designed to fit either case. As the limitation was in the first instance to the brother and the sisters, it cannot be supposed that it was intended to provide for the issue of any brother other than the one first referred to.

It is claimed, however, that the construction contended for by the respondents is fortified by reference to the provisions in favor of Viola and Adelaide Yates, contained in the same seventh clause. These are identical in form with the provision for Catharine, except that the contingent remainders limited upon their shares respectively, instead of being given to their surviving *brother* and sisters, is given to their surviving brothers and sisters. From the use of the word *brothers* in the two provisions last referred to, it is argued that the intent of the testator must have been, as to the shares of those two granddaughters, to provide for any half-brother they might subsequently have, and consequently to include their half-sisters; and that it is to be presumed that his intentions were the same in regard to the share of Catharine.

The use of the word "brother" in the case of Catharine, and "brothers" in the cases of Viola and Adelaide, indicates either that the testator had some different intention in the one case than the other, or that the difference in language occurred through inadvertence. It would certainly seem extraordinary that, if he entertained different intentions, he should select such an obscure method of manifesting them; and it is equally difficult to comprehend why he should design that the two half-sisters should participate in the succession to the shares of some of his grandchildren and not of the others. If any significance is to be attached to the difference between the term "brother" and "brothers" the argument is of course open that the term "brother" may have been inadvertently used in

the case of Catharine ; but we are of opinion that the difference has no significance and was accidental. And we are confirmed in this conclusion by reference to the provision as to the share of Henry Yates. His share was limited to his surviving "sisters" only, showing clearly the intention of the testator, in that case at least, to confine his dispositions to his own descendants. And it is not reasonable to suppose that, if he had intended to make nice distinctions between those who were to succeed to the shares of his different grandchildren, he would have left them to depend upon the ingenious course of reasoning resorted to by the respondents.

A more substantial guide to the intentions of the testator is, we think, afforded by recurring to the primary provision which he makes for the children of his daughter Cordelia. If he had entertained any idea of including in that provision the half-sisters of those grandchildren, the issue of the second marriage of their father, he would naturally have included them in the original bequest. They were living when the will was made, and yet no provision is made for them, but the share which would have gone to his daughter Cordelia is carefully limited to her children and their issue, and the issue of the second marriage of their father are in no way recognized.

The whole frame of the will seems to us to indicate that the testator intended to bestow his property upon his own descendants. Notwithstanding this general intent it was still possible, however, that by some convolution of events parts of his estate might have drifted out of that current. And upon these possibilities an argument is sought to be constructed. But notwithstanding the ingenuity and ability of that argument we are of opinion that the mere omission of the testator to guard against every such contingency, even if it were possible to do so, cannot be construed as indicating an intention that his estate should go out of the natural course. To so hold would reverse the ordinary rules of construction applicable to such cases.

We are, therefore, of opinion that on the death of Catharine Yates, her portion of the testator's property (which under the

provisions of the will must be taken as converted into personalty), was under the will distributable to her brother Henry and her sisters Viola and Adelaide. And that her half-sisters Frances and Stella Yates were not entitled to share therein.

The judgments below should, therefore, be reversed and judgment entered for the appellants, according to the foregoing views, the costs of all the parties to be paid out of the estate.

All concur.

Judgment accordingly.