In the Matter of the Application of SUSANNA PETTIT, Respondent, for a Determination as to the Validity, Construction or Effect of the Disposition of the Property Contained in the Last Will and Testament of ARTHUR R. PETTIT, Deceased.

MARION G. BALDWIN and Others, Appellants.

Third Department, May 15, 1934.

*Blodgett & Smith* [*H. E. Blodgett* of counsel], for the appellants.

*Murphy, Aldrich, Guy & Broderick* [*John H. Broderick* of counsel], for the respondent.

HEFFERNAN, J. On December 20, 1932, Arthur R. Pettit, a resident of the county of Rensselaer, died, survived by his widow, Susanna Pettit, the respondent, and by two daughters, step-children of the widow, Marion G. Baldwin and Ruth E. Killam, two of the appellants. The three constitute his distributees.

Decedent left a holographic will dated May 29, 1924, upon the construction of which the rights of the parties concerned depend, which reads as follows: " At my death I Arthur R. Pettit of the City of Troy New York hereby will and give to Susanna Pettit my wife and Ruth E. Pettit my daughter and Marion G. Baldwin my daughter my Real Estate and personal property as follows:

" To Susanna Pettit my wife all Real Estate, including lots and buildings known as 1310 Jacob Street Troy N. Y. all beds, linens, blankets, comfortables in said property, also all furniture, rugs in trust with her and to be used by her untill such time as she wishes

to release them, at that time or at her death they are to be divided between Ruth E. Pettit and Marion G. Baldwin my daughters as my daughters shall agree. The six hand painted plates I give to Ruth E. Pettit my daughter The Fisher Upright piano I give to Marion G. Baldwin my daughter. All towels, table linen, and other furniture as personal property know in family at death of Alice G. Pettit to be devided between Ruth E. Pettit & Marion G. Baldwin my daughters. This Will does not include any personal property bought by Susanna Pettit my wife This is my last will and testament.

" dated Troy, New York this day May 29 1924.

" I appoint William A. Cary of Schenectady N. Y. and Ford E. Ackner of Cincinnati Ohio as executors.

" ARTHUR R. PETTIT."

Decedent left personal property, consisting of household furniture and effects, of less than $100 in value and a parcel of real estate known as 1310 Jacob street, Troy, valued at $10,000.

The controversy arises over the disposition of the real property. After the will was probated the widow instituted a proceeding in the Surrogate's Court for a construction of its provisions. The surrogate held that there was an absolute gift of the realty to the widow and that the personal effects were to be held by her for her use during life, or until such time as she released them, when title thereto should vest in the daughters.

The testator was not a lawyer. While he undoubtedly possessed some smattering of legal lore his intentions are inartificially expressed. He ignored the rules of grammar and punctuation. These rules, however, may be entirely disregarded in order to carry into effect the manifest intention of the testator. (*Covenhoven* v. *Shuler*, 2 Paige Ch. 122.) No degree of technical informality in a testamentary declaration will deter the judicial expositer from endeavoring to ascertain therefrom the intention of the testator and of giving effect thereto when so ascertained.

In its preamble this will definitely expresses the intention of the testator. There he distinctly and plainly said: " I * * * will and give to Susanna Pettit my wife *and* Ruth E. Pettit my daughter and Marion G. Baldwin my daughter my *Real Estate and personal property as follows.*"

The body of the will contains four sentences relating to gifts. Each sentence expresses a single thought, and each disposes of clearly designated property. The first sentence disposes of all real estate, particularly that located on Jacob street, together with the personal property in that house. The second sentence bequeaths

the six hand-painted plates and the Fischer upright piano. The third sentence makes a gift of other personal property " know in family." The fourth sentence excludes personal property bought by testator's wife.

In order to arrive at the conclusion that decedent intended that the real estate should go to his widow in fee it is necessary to make two sentences out of the first. The only place to make the division would be between " Troy N. Y.," and " all beds," and construe the period after the abbreviation of New York as the termination of a sentence. The word " all " following the abbreviation begins with a small " a." It is obvious from the will as a whole that testator was familiar with the proper use of capital letters. It is quite significant that every other sentence in the will commences with a capital letter. The testator apparently understood the meaning of the word " trust." The will clearly shows that he also understood how to make an outright gift. If he intended to give his widow the real estate in fee and not in trust undoubtedly he would have said so. The will indicates that it was testator's purpose to provide for his wife during her lifetime, and at her death, for his daughters. He was especially careful to see that the widow should have the use of the furniture and furnishings in the house. Clearly testator intended to give his widow a life estate in the real property with remainder over to his daughters. To construe this will as giving the fee to the widow is arbitrary. Not only that, but to so hold would disinherit the daughters except for the small legacy of six plates to one and the piano to the other. Certainly testator's children have as great a claim on his bounty as his widow. Abstract justice would say so, the written law regards them with equal favor and we are unwilling to impute to testator the inhuman intention of disinheriting his children.

In his opinion the learned surrogate characterized the will as ambiguous. There is a primary rule applicable to the construction of wills that the heirs at law shall not be disinherited by conjecture, but only by express words, or necessary implication. The heirs of a testator are favored by the policy of the law and cannot be disinherited upon mere conjecture, and when the testator intends to disinherit them he must indicate that intention clearly. In the absence of plain words in the will to the contrary, the presumption is that the testator intended that his property should go in the legal channel of descent. The law favors that construction of a will which conforms most nearly to the general law of inheritance. (28 R. C. L. 229, 230; 40 Cyc. 1412.) Where the testator's intention, as expressed in his will, is ambiguous or obscure, such a construction should be adopted, if possible, as will dispose of

his property in a just, natural or reasonable manner. (40 Cyc. 1411.) The rule that " where a will is capable of two interpretations, that one should be adopted which prefers those of the blood of the testator to strangers * * * can be overcome only by clear and unequivocal language." (*Wood* v. *Mitcham*, 92 N. Y. 375; *Matter of Werlich*, 230 id. 516.)

We have not overlooked the argument of the learned counsel for respondent that a will should be liberally construed in favor of a widow. We do not question the correctness of that assertion. It is but natural for a man to make provision for his widow and children. His will should be construed, if possible, so as not to work an injustice to the natural objects of his bounty. There is nothing in the will under consideration to suggest that decedent intended to provide for the widow to the exclusion of the children.

The decree appealed from should be reversed and the matter remitted to the surrogate to enter a decree in accordance with this opinion, with costs to all parties filing briefs, payable out of the estate.

HILL, P. J., RHODES, CRAPSER and BLISS, JJ., concur.

Decree reversed and matter remitted to the surrogate to enter a decree in accordance with the opinion, with costs to all parties filing briefs, payable out of the estate.