## In the Matter of the Estate of JOHN LOGLIER, Deceased.

Surrogate's Court, Kings County, April 23, 1936.

*Morrison & Lynn [Robert C. Fulton of counsel], for the executor,* Herbert A. Treat.

*Gwinn & Pell [John F. LeViness, Jr., of counsel], for Maude S.* Candelet and Frank A. Sevigne.

WINGATE, S. It may readily be conceded that the number and variety of the questions of interpretation of this blank-form, home-made will which have been raised in this proceeding, are not so extensive as is frequently encountered in connection with documents which are the products of professedly more expert authorship. Lest this statement be deemed an encouragement of the pennywise and pound foolish practice of attempting to prepare such an important document without expert legal assistance, it should be noted that the dispositive directions comprise only three short paragraphs, the devolutionary effects of all of which are in present controversy. It follows, therefore, that if the opposing contentions of counsel are to be accepted as a criterion, the testator has achieved the unsurpassable rating of one hundred per cent in turgidity of expression.

His directions read:

" *First,* after my lawful debts are paid, I give and bequeath, to be equally divided between my two sisters, Mrs. Lena Green and Mrs. Mary Sevigne all of my possessions, whether real, or personal, or mixed and wheresoever situated.

" In the event of the death of one of my sisters before me, the aforesaid possessions shall revert to the survivor or to the survivor's children.

" In the event that neither of my sisters can be located within the period of one year from the time of my death, not having been in communication with them for many years, the aforementioned possessions shall revert to Mr. Herbert A. Treat."

The testator died on September 28, 1933. Both of the named sisters predeceased him. The date of death of Mary Sevigne was July 8, 1925, and that of Lena Green, May 19, 1926. Lena left no descendants. Mary was survived by a son and a daughter, Frank A. Sevigne and Maude S. Candelet, and by three grandchildren, John and Walter Metters and Ruth Estes, the children of a deceased daughter, Selinda, who died in 1921. All five are parties to the present proceeding. So far as the submitted proofs disclose, the only other blood relative of the decedent living at the time of his death was Fred Graves, the son of another deceased sister, Elizabeth Graves, who resides in Westfield, Mass., and who has also been cited herein.

It is the contention of Mr. Treat, who is a stranger in blood to the decedent, that he is entitled to receive the entire estate and this position must first receive consideration.

Whatever the other defects of the testamentary instrument, testator's state of mind respecting a preference for those of his blood is clearly reflected. Its language demonstrates that in spite of his " not having been in communication with them for many years," the ties of kinship were uppermost in his mind, since it was only " in the event that neither of my sisters can be located within the period of one year," which, of course, was an approximation of the time which usually elapses before estate distribution is made, that his property was to be diverted from his blood relatives to a stranger.

The gift to Mr. Treat is clearly predicated upon a condition, wherefore it is obvious that, before an award can be made to him, the fulfillment of this condition precedent to his right to receive must be demonstrated. The condition is composed of two parts, the *first*, in point of statement, being " that neither of my sisters can be located." The *second* specifies the time within which such failure to " locate " must continue.

There is no suggestion in the memoranda or arguments of counsel nor in any part of the record that the " locating " which has taken place was not within the specified period, wherefore the sole question as to compliance with the express condition precedent to the rights of Mr. Treat revolves around the connotation in testator's mind in respect to the phrase " my sisters can be located."

It is contended on behalf of Mr. Treat that this should be construed to mean that one or both of the sisters should be found

*living.* In the opinion of the court this interpretation is too narrow. As hereinbefore noted, the instrument as a whole is permeated with the thought of preference for testator's kin over a stranger, if such kin were reasonably possible of discovery. The donative provisions for the benefit of such kin do not demonstrate any marked preference for the named sisters over their descendants, since express provision is made for a substitutionery gift to the latter on one contingency of predecease of the former. It seems, therefore, that the preferred interpretation, on the language of the entire will, is that the gift to Mr. Treat was conditioned on a failure to learn what had become of the sisters with whom the testator had for so long been out of contact, and not, as contended, that the sisters must be actually found in the flesh.

Even though it were to be determined, however, that the meaning attributable to the word " locate " is unclarified by the context, the same result must follow by application of the only pertinent canon of construction. The controversy at this point is solely between kindred of the testator and a stranger to his blood. In such a situation, if ambiguity be found to exist, it must be resolved in favor of the blood relatives. " Where a w.ll is capable of two interpretations, that one should be adopted which prefers those of the blood of the testator to strangers * * * can be overcome only by clear and unequivocal language." (*Wood* v. *Mitcham,* 92 N. Y. 375, 379, 380.) The iterations and reiterations of this basic principle are literally legion. (See *e. g., Matter of Rooker,* 248 N. Y. 361, 364; *Quinn* v. *Hardenbrook,* 54 id. 83, 86; *Matter of Werlich,* 230 id. 516, 520; *Matter of Pettit,* 241 App. Div. 209, 212; *Matter of Weil,* 151 Misc. 841, 850; affd., 245 App. Div. 822; *Matter of Hopner,* 148 Misc. 748, 751, 752; *Matter of Myers,* 137 id. 868, 872; *Matter of Gurlitz,* 134 id. 160, 163.)

It must accordingly be determined that the condition precedent to the receipt of any benefit by Herbert A. Treat has failed of fulfillment and that he is not entitled to any share of the assets distributable under the will.

This alternate gift having failed through non-occurrence of the condition upon which it was predicated, the ascertainment of the identity of those entitled remains for determination.

The primary gift is to testator's named sisters. As they both predeceased him, their gifts obviously lapsed (*Vernon* v. *Vernon,* 53 N. Y. 351, 362; *Langley* v. *Westchester Trust Co.,* 180 id. 326, 329; *Matter of Blankemeyer,* 226 id. 638, 639; *Matter of Werlich,* 230 id. 516, 520), since this rule is applicable where the named beneficiary is dead at the time of the execution of the will. (*Matter of Tamargo,* 220 N. Y. 225, 232.)

The sole remaining dispositive direction of the will reads: "In the event of the death of one of my sisters before me, the aforesaid possessions shall revert to the survivor or the survivor's children."

This purported gift is obviously based on a condition which has occurred. Not only one of testator's sisters predeceased him — both did. The greater includes the lesser. To whom was the gift made in this contingency? To the "survivor or the survivor's children."

Whereas words of survivorship, in the absence of other indication, will usually be construed to mean survivorship of the testator, the context, when otherwise, will control. Such is the present case. He is speaking of his sisters and of the death of one of their number, wherefore his designation of "survivor" obviously means the one of the two who should outlive the other. Mary Sevigne died in 1925 and her sister, Lena Green, in 1926. The latter was obviously the survivor and thus under the language of the will became the designated recipient. Since, however, she also predeceased the testator, her gift lapsed and the alternative gift to "the survivor's children" became effective. According to the facts of the record, however, she had no children. It follows, since all of the dispositive directions have been exhausted without finding any one entitled to receive the gift, that the property must pass as intestate.

The testator died on September 28, 1933. On that date the pertinent portions of the Statute of Distribution were contained in subdivisions 6 and 9 of section 83 of the Decedent Estate Law as amended by chapter 229 of the Laws of 1929. This continued unchanged the previously existing applicable rules. As authoritatively construed, their effect in the present case is to entitle each living nephew and niece of the decedent to one share of the distributable estate, and to give to the descendants of the deceased niece collectively, the share to which such deceased niece would have been entitled had she survived. (*Matter of Samson*, 257 N. Y. 358, 361; *Matter of DeVoe*, 107 App. Div. 245, 248; *Matter of Prote*, 54 Misc. 495, 497; *Matter of Neubauer*, 141 id. 298, 302.)

It follows that Frank A. Sevigne, Maude S. Candelet and Fred Graves will each receive one-quarter of the distributable estate and John Metters, Ruth Estes and Walter Metters will each receive one-twelfth.

Enter decree on notice in conformity herewith.