In the Matter of the Estate of MARIA L. WINTRINGHAM, Deceased.
(MARY B. WARDELL TRUST.)

Surrogate's Court, Kings County, December 8, 1936.

*Wilson, Huntington & Lord* [*James W. Scott* of counsel], for successor trustee, City Bank Farmers Trust Company, petitioner.

*H. P. Humphreys* [*Sidney G. Soons* of counsel], for Maude R. Wardell, widow of residuary legatee who predeceased life tenant herein, respondent.

WINGATE, S. The contested issue of testamentary interpretation in this proceeding concerns the identity of the alternate remaindermen under two residuary trusts erected by the fifth item of testatrix's will. The residue was directed to be divided into indicated parts. One-quarter thereof was to be erected into a trust with income payable to Mary B. Wardell for life, and one-eighth into a like trust for the life benefit of William T. Wintringham.

The directions respecting the dispositions of the remainders of these trusts are identical and read: " And on the death of each of the above life beneficiaries, to pay over the principal of said trust fund, equally, among the following: My nephews, Clifton W. Wardell, Henry Barken Wintringham, William T. Wintringham, 2nd, Henry C. Wintringham, Jr., John S. Wintringham and Arthur B. Wintringham, and my nieces Georgia Wintringham and Frances M. Wintringham, and my great-nephew Sidney Garrison Wintringham, or to the heirs of such as may have died at the time when said payments are directed to be made, the representatives of any who may have died taking the share which the parent would have taken, if living."

This will bears date the 9th day of February, 1928, and was admitted to probate on December 26, 1929.

Mary B. Wardell, the life beneficiary of the trust first noted, died on February 17, 1935, and William T. Wintringham died on January 26, 1936. The present issues concern the devolutions of the remainders of these trusts. The only controversy relates to the portion thereof primarily dedicated to Clifton W. Wardell, who predeceased both of the life tenants, having apparently died on December 30, 1934, although the petition in respect to the Wintringham trust places the date of his death as January 15, 1908. At the time of his death he had no children or descendants of children, the only persons in existence entitled to share in his estate being his mother, Mary B. Wardell, the life beneficiary of one of the trusts in question, and his wife, Maude R. Wardell.

The alternate donees of the several parts of the remainder in the event of the predecease of the life beneficiaries by any of the named remaindermen are " the heirs " of the latter " at the time when said payments are directed to be made," which is " on the death of the " respective life tenants. It follows that the person

or persons entitled to take the portions of the remainders of the trusts dedicated to Clifton W. Wardell are those who bore the stated relationship of " heirs " to him on February 17, 1935, immediately following the death of his mother, the life tenant, and on January 26, 1936.

The sole questions for judicial determination in this situation are, *first*, the class of individuals whom the testatrix had in mind (*Matter of Lyons*, 160 Misc. 429, 431) on February 28, 1928 (*Matter of Weil*, 151 Misc. 841, 848; affd., 245 App. Div. 822, and authorities cited), by the descriptive designation of " heirs " of Clifton W. Wardell; and, *second*, whether there were any persons answering to this description on the critical dates specified in the will, namely, the dates of death of the life tenants of the two trusts, and if so, their identity.

It is, of course, a familiar fact that with the effectuation of chapter 229 of the Laws of 1929, as amended by chapter 174 of the Laws of 1930, in effect September 1, 1930, the term " heir " has become obsolete (*Matter of Gant*, 142 Misc. 446, 450), and has been legally replaced by the term " distributees." This fact is, however, wholly immaterial in the present connection, since at the time of the execution of the will the term was current and had a well-established legal meaning. The situation in this regard is, therefore, closely analogous to a testamentary gift to " issue " in a will drawn prior to April 30, 1921, which was deemed to imply a distribution to descendants *per capita* (*Soper* v. *Brown*, 136 N. Y. 244, 248), and was given that connotation in a construction subsequent to 1921, although chapter 379 of the laws of that year enacted that the use of the term should be held to indicate an intent for a stirpital distribution. (*Matter of Taft*, 143 Misc. 387, 390, 391; *Matter of Mann*, 138 id. 42, 47 *et seq.*)

As current at the time of the execution of this will, the term " heirs " had two meanings, depending on the context, being understood either " as referring to the persons who would take or inherit from him upon his death, or in a restricted sense, as meaning heirs of the body, issue or lineal descendants." (*Johnson* v. *Brasington*, 156 N. Y. 181, 185. See, also, *Matter of Cramer*, 170 id. 271, 276.)

In the case at bar, had the substitutionary gift been merely to the " heirs " of the primary donee, there might have been some possible question as to whether the testatrix had used the term " heirs " with the former connotation, which might potentially have accomplished a gift to the " distributees " of the primary donee as the term is employed in modern parlance. The succeeding clause of the will, however, clarifies her meaning, since she directs

that the " representatives " or substitutionary beneficiaries " of any who have died taking the share which the parent would have taken, if living." This obviously furnishes a clue to the intention of the testatrix respecting the identity of the substitutionary donees, and indicates an expectation that under the words of her gift, the blood descendants, or heirs of the body of the primary donee, were to be the persons who were to receive the benefit in the event that Clifton W. Wardell had predeceased the date of distribution.

Whereas particular precedents are ordinarily worthless in solving questions of testamentary interpretation (*Matter of Rossiter*, 134 Misc. 837, 839; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissman*, 137 Misc. 113, 114; affd. on opinion of this court, 232 App. Div. 698; *Matter of Corlies*, 150 Misc. 596, 597, 598; affd., 242 App. Div. 703), there is in the present instance one of the extremely rare exceptions to the rule.

In *Tillman* v. *Davis* (95 N. Y. 17) the testatrix erected a residuary trust for the life benefit of her husband, directing that on his death a portion of the remainder should be divided into seven equal parts, one of which was given to each of seven named persons or classes of persons, one of whom was William N. Davis, who predeceased the life tenant, leaving a wife but no children, the direction continuing (p. 23), " the heirs of any or either of the foregoing persons who may die before my said husband to take the share which the person or persons so dying would have taken if living."

The determination of the court as to the meaning of the word " heirs," thus used, is so apposite to the case at bar that with the substitution of " Clifton W. Wardell " for " Davis," the following observations of the court are precisely applicable to the case at bar. The opinion reads (beginning at page 24):

." The primary meaning in the law of the word ' heirs ' is the persons related to one by blood, who would take his real estate if he died intestate, and the word embraces no one not thus related. It is not strictly proper to designate persons who succeed to the personal estate of an intestate. The proper primary signification of the words ' next of kin ' is those related by blood, who take personal estate of one who dies intestate, and they bear the same relation to personal estate as the word ' heirs.' does to real estate. The words ' heirs ' and ' next of kin ' would not ordinarily be used by any testator to designate persons who were not related to him by blood. In this case, if the testatrix had intended that the widow of Davis should take by substitution in his place the whole or any part of the legacy given to him, it is presumable that her name would have been mentioned. Or if it had been intended by the

testatrix that those persons should succeed to the shares mentioned * * *, who were entitled to take under Statutes of Distribution, she would not have used the word ' heirs,' but would have designated them as the persons entitled by law to take the personal property in such cases. It is presumable that she was attached to the legatees named in those clauses by ties or affection or of blood, and hence that she desired that the persons of the same blood, who might also be relatives of her blood, should succeed to the property.

" In this State it has uniformly been held, when the question has arisen for consideration in the courts so far as we are able to discover, that the word ' heirs ' applied to the succession of personal estate means next of kin, and that the words next of kin do not include a widow or a husband of an intestate."

The rule of interpretation of the meaning of the word " heirs," as thus elucidated, has been applied with complete uniformity in later adjudications in the absence of direct and unmistakable evidence of an intention for its employment with a broader signification. (*Steinway* v. *Steinway*, 163 N. Y. 183, 196; *Burns* v. *Burns*, 190 id. 211, 215; *Matter of Evans*, 234 id. 42, 44; *N. Y. Life Ins. & Trust Co.* v. *Winthrop*, 237 id. 93, 108; *Snider* v. *Snider*, 11 App. Div. 171, 172; affd., 160 N. Y. 151; *Matter of Finck*, 168 App. Div. 135, 138.)

In the present will there is, as hereinbefore noted, not only no indication of a contrary intent but there is present additional language indicating a wish that the substitutionary beneficiaries shall be descendants of the primary donee.

Under such circumstances the meaning of " heirs " defined in *Tillman* v. *Davis* is indubitably binding upon this court, with the result that the widow of Clifton W. Wardell does not come within the testatrix's description of a person entitled to share in the residuary distribution.

Since there was no person in existence at the date of death of Clifton W. Wardell answering to a description of his " heirs," and since this gift was made in the residuary clause of the will, it follows that the portion of the remainder primarily dedicated to him must pass as intestate property to the next of kin of the testatrix. (*Matter of Lyons*, 154 Misc. 368, 371; affd., 271 N. Y. 204; *Matter of Moores*, 155 Misc. 471, 474; affd., 248 App. Div. 738; *Matter of Drake*, 153 Misc. 691, 693; affd., 246 App. Div. 758; *Matter of Weil*, 151 Misc. 841, 848; affd., 245 App. Div. 822; *Matter of McCafferty*, 142 Misc. 371, 381; affd., 236 App. Div. 678; *Matter of Green*, 160 Misc. 490, 492.)

Enter decree on notice in conformity herewith.